EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* JOSÉ A. DOMÍNGUEZ FRAGUADA, acusado y recurrido.

*Número:* O-76-364          *Resuelto:* 5 de enero de 1977

538

*Roberto Armstrong, Jr., Procurador General Interino, Justo Gorbea Varona, Subprocurador General Interino, y Federico Cedó Alzamora, Procurador General Auxiliar,* abogados del peticionario; *Joaquín Monserrate Matienzo, y Víctor Ramos Acevedo,* abogados del acusado.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Los hechos de este caso, sintetizados en relato del Procurador General, cuya fidelidad no impugna el recurrido limitándose a llamarlos irrelevantes (alegato pág. 17) son los siguientes:

"A las 9:30 de la mañana del jueves 28 de marzo de 1974 José A. Domínguez Fraguada se encontraba en la Urbanización Caparra Terrace de Río Piedras en compañía de otras personas. Estaba armado de un revólver Colt 38, de cañón corto y no tenía la licencia correspondiente para portarlo. Tocó a la puerta

de la residencia del Sr. Pablo Delfín Rivera Fontán, localizada en el 1515, So, de la Calle #16 de esa urbanización, identificándose como Sargento de la Policía de Puerto Rico y anunciando que iban a efectuar un registro de la casa en busca de sustancias narcóticas.

Registraron toda la casa, esposaron a Pablo Delfín Rivera, y a Monserrate Vélez y los encerraron en uno de los dormitorios. Le quitaron a la fuerza un revólver que portaba el Sr. José Arnaldo Pontón quien llegó de visita a la casa en esos momentos y cogieron un dinero que encontraron en una bolsa en el closet del cuarto de Pablo Delfín Rivera. Echaron la bolsa de dinero en una maleta y se la llevaron en contra de la voluntad de los allí presentes, abandonando la casa cuando no pudieron conseguir que les abrieran la caja fuerte."

De la resolución del juez de instancia sobre nuevo juicio aparece que el acusado fue hallado culpable por un jurado en los casos de hurto mayor e infracción al Art. 8 de la Ley de Armas y que el juez también lo encontró culpable de infracción al Art. 6 de la misma Ley; que a solicitud de la defensa el caso fue referido para informe a la Oficina de Probatoria y que rendido el informe el acusado presentó moción de nuevo juicio y que "en la discusión de dicha moción se levantó por primera vez([1]) el hecho de que la foto utilizada para identificar al acusado previo a su arresto, detención y posterior identificación en la rueda de detenidos fue obtenida ilegalmente."

La Policía tenía un retrato del acusado Domínguez Fraguada que había obtenido de su solicitud de licencia de conductor de vehículos de motor obrante en el Departamento de Obras Publicas. Allí fueron los agentes cuando lo trazaron por la tablilla como conductor de un Volkswagen que seguía

---

([1]) No hay explicación en el expediente para que el juez acogiera este planteamiento tardío (Regla 63 de Procedimiento Criminal) pero el Procurador no suscita la cuestión. Como error de derecho también apunta el acusado en su moción de nuevo juicio no haberle permitido el tribunal "que se estableciera mediante el testimonio de testigos de cargo, prueba de motivación y experimental" al no permitir que al testigo Pablo Delfín Rivera se le represuntara "sobre la posibilidad de un robo simulado." (Moción, párr. 10.)

uno de los camiones blindados de Wells Fargo; y antes de este incidente, se había ubicado ese retrato por el número de tablilla suplido por unas monjas que lo anotaron al observar el estacionamiento sospechoso del conductor, que luego identificaron como el apelante, en las inmediaciones del Hogar Carmelitano.

El Tribunal Superior concedió nuevo juicio y ordenó que del mismo se excluyera la evidencia de identificación del acusado. Manifestó el juez al final de su decisión: "Cierto que al mantener los postulados de una democracia a veces (y tal vez en este caso), un culpable logra escapar de su justo castigo, pero ese es el precio que, aunque doloroso, hemos escogido pagar, porque si abandonamos estos principios, algún día terminaremos pagando el precio de nuestra propia libertad."

Recurrió el Procurador, paralizamos los procedimientos en auxilio de nuestra jurisdicción y expedimos orden para mostrar causa por la que no deba anularse la concesión de nuevo juicio.

▇▇▇ Carece de validez el argumento del acusado interventor al negar al Estado derecho a recurrir en *certiorari* contra una concesión de nuevo juicio, fundado en que debió apelar en 5 días. El Pueblo no tiene otro recurso, porque la Regla 194 de Procedimiento Criminal que concedió exclusivamente al acusado el derecho a demorar su apelación en determinados casos (²) hasta que se decida en su contra la mo-

---

(²) Regla 194. "La apelación se formalizará presentando un escrito de apelación en la secretaría de la sala del tribunal que dictó la sentencia, dentro de los veinte días siguientes a la fecha en que la sentencia fue dictada, pero si dentro del indicado período de veinte días se presentare una moción de nuevo juicio fundada en las Reglas 188(e) y 192, el escrito de apelación podrá presentarse dentro de los veinte días siguientes a aquel en que se notificare al acusado la orden del tribunal denegando la moción de nuevo juicio.

"El apelante deberá notificar al fiscal la presentación del escrito de apelación dentro del término para apelar y dicha notificación se hará en la forma provista en estas reglas, salvo lo que se dispone en la regla siguiente."

ción de nuevo juicio, abolió el derecho estatutario que al ministerio público reconocía el antiguo Art. 348 (³) del Código de Enjuiciamiento Criminal de "establecer apelación . . . de una providencia concediendo la celebración de nuevo juicio." El método de enjuiciamiento inaugurado por las Reglas de marcada tendencia a simplificar y agilizar el procedimiento criminal es incompatible (⁴) con la lista de apelaciones, algunas de ellas interlocutorias, que bajo el citado artículo podía promover el Estado. Es correcto el dato en el Tomo 10 de las Leyes de Puerto Rico Anotadas, sobre derogación del Art. 348 que corresponde a su clave 34 L.P.R.A. sec. 1075. La apelación al Tribunal Supremo, según el claro texto de la Regla 193, se le da únicamente al acusado contra sentencias finales dictadas en casos criminales originados en el Tribunal Superior.

■ El Pueblo ha traído este recurso de *certiorari* transcurridos cinco meses desde que en 9 de marzo de 1976 dictó resolución el Tribunal Superior concediendo nuevo juicio. Esta falta de diligencia sería motivo para denegar el auto si no mediaran razones de aplicación de normas que regulan un aspecto de la identificación criminal, asunto de diaria

---

(³) Art. 348 de Enjuiciamiento Criminal.

"El ministerio público puede establecer apelación:

1. De una providencia desestimando la acusación.

2. De una sentencia a favor del acusado en virtud de excepción perentoria puesta a la acusación.

3. De una providencia concediendo la celebración de nuevo juicio.

4. De una providencia declarando el sobreseimiento provisional.

5. De una providencia dictada después de pronunciado el fallo, que afecte los derechos sustanciales del ministerio público.

6. De una orden del tribunal al jurado mandando que este pronuncie veredicto a favor del acusado."

(⁴) Regla 254 de Procedimiento Criminal.

"El Código de Enjuiciamiento Criminal de Puerto Rico, aprobado el primero de marzo de 1902, según ha sido enmendado hasta el presente, y cualesquiera otras leyes, en todo cuanto se relacione o refiera a procedimiento criminal que sea incompatible o contrario a estas reglas, quedan por éstas derogados."

confrontación en nuestras salas de justicia. El valor de equidad y justicia en este caso va por encima de la relativa demora en celebrarle nuevo juicio a un convicto, considerando especialmente la conclusión a que llegamos de que no procedía la concesión del mismo. Instado el recurso de *certiorari* a los 152 días de la resolución concediendo nuevo juicio es más ilusorio que opresivo el exceso matemático de 32 días, apareciendo del propio alegato del acusado que medió *justa causa* para las suspensiones de 19 de mayo, 1ro. de julio y 22 de julio de 1976, elevándose la solicitud de *certiorari* el 17 de agosto de 1976. *Ibid*, pág. 6. Están presentes circunstancias extraordinarias o especiales. *Rodríguez* v. *Tribunal Municipal y Ramos*, 74 D.P.R. 656, 667 (1953). De denegar *certiorari*, "estaríamos proclamando la ineficacia de la justicia penal." *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 904, 927 (1960).

El derecho a la vida íntima, acortado en su nombre a "privacidad" es objeto de esmerada protección en nuestra Constitución que en su Art. II (Carta de Derechos) proclama: La dignidad del ser humano es inviolable (Sec. 1); Toda persona tiene derecho a protección de ley contra ataques abusivos a su vida privada o familiar (Sec. 8); y en cuanto al caso de autos concierne en particular, la declaración de que no se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables, que cierra con la regla excluyendo del juicio la evidencia obtenida en violación de ese mandato (Sec. 10).

■ Fundamentó el juez de instancia su resolución concediendo nuevo juicio en el inciso (f) ([5]) de la Regla 188 de Procedimiento Criminal al determinar que el acusado nunca autorizó el uso por la policía de la foto tomada de su expe-

---

([5]) Regla 188(f)—"El tribunal, además, concederá un nuevo juicio cuando debido a cualquier otra causa de la cual no fuere responsable el acusado, éste no hubiere tenido un juicio justo e imparcial."

diente en el Departamento de Obras Públicas y que se utilizó en la fase investigativa del caso por hurto mayor, como instrumento de identificación.

■ La solicitud de licencia de conducir y los retratos que la acompañan, no están investidos de confidencialidad.[6] Al ingresar en los archivos o registros del Departamento estos documentos adquieren carácter público u oficial, abiertos a inspección y expedición de copias. Arts. 47 y 48 Ley de Evidencia (32 L.P.R.A. secs. 1781 y 1782). Los datos de la solicitud son de evidente utilidad para el Estado en la identificación de infractores de la Ley de Vehículos y Tránsito. Si están en posesión del Estado y disponibles para la persecución de una infracción de tránsito, no vemos razón fundada por la que no puedan utilizarse por el mismo Estado en la investigación e identificación del acusado por cualquier otro delito.

■ La privacidad no sigue a los documentos como una sombra. Termina una vez que la persona los expone voluntariamente a la vista y conocimiento del público. *Pueblo* v. *Bogard,* 100 D.P.R. 565, 572 (1972). Al desprenderse de su fotografía y dejarla permanentemente radicada en una agencia del Gobierno en total ausencia de confidencialidad otorgada por ley a ese documento, no podía albergar el acusado expectativa alguna de privacidad protegida por la Constitución. *United States* v. *White,* 401 U.S. 745 (1971); *Bogard,* supra, pág. 572; *Katz* v. *United States,* 389 U.S. 347, 351 (1967). Por análoga razón de egreso y proyección fuera del ámbito de vida íntima del individuo pierden la calidad de papeles y efectos privados y la protección de la Cuarta Enmienda, concordante de la Sec. 10 de nuestra Carta de Derechos, los cheques, hojas de depósito y estados financieros de

---

(6) Aun los informes escritos de accidentes exigidos por el Art. 4-107 de la Ley de Vehículos y Tránsito que por ley se clasifican como *confidenciales* pierden esa calidad cuando sea necesario revelar la identidad de la persona envuelta en el accidente.

que se desprende el cliente de un banco. *United States* v. *Miller*, (infra) ; y los documentos de contabilidad de ingresos entregados por el contribuyente investigado a su abogado. *Fisher* v. *United States*, 96 S.Ct. 1569, 48 L.Ed. 2d 39 (1976).

Aun dentro de la confidencialidad observada en la relación entre el banco y su cliente no se percibe legítima expectativa de privacidad en sus cheques y hojas de depósito. Ha declarado el Tribunal Supremo de los Estados Unidos que todos los documentos que forman el récord o expediente bancario incluyendo estados financieros y hojas de depósito, contienen únicamente información voluntariamente trasmitida a los bancos y expuesta a sus empleados en el curso ordinario de los negocios, valiosa por su alto grado de utilidad en investigaciones y procedimientos criminales, fiscales y regulatorios. Y añade: "El depositante asume el riesgo, al revelar sus asuntos a otro, de que la información sea trasmitida por esa persona al Gobierno de los Estados Unidos. *United States* v. *White*, 401 U.S. 745, 751–752 (1971). Esta Corte ha sostenido reiteradamente que la Cuarta Enmienda no prohíbe la obtención de información revelada a un tercero y pasada por éste a las autoridades gubernamentales, aun cuando la información se revele bajo el supuesto de que sólo se utilizará para un propósito limitado y que la confianza depositada en dicha tercera parte no será traicionada." (*White*, citado, pág. 752; *Hoffa* v. *United States*, 385 U.S. 293, 302 (1966) ; *López* v. *United States*, 373 U.S. 427 (1963)), *United States* v. *Miller*, 48 L.Ed.2d 71, 79 (21 abril 1976).

La protección contra registros irrazonables tiene un costo social que ha de medirse en cada caso por el grado de obstrucción que enfrenta a la investigación criminal y por su efecto frustrante del propósito central del juicio que es buscar y fijar la verdad. *Stone, Warden* v. *Powell*,([7]) 428

---

([7]) Se dijo en *Stone*, citado: "La aplicación de la regla [de exclusión de evidencia] desvía el proceso de depuración de la verdad y a menudo

U.S. 465, 44 U.S.L.W. 5313 (6 de julio, 1976). Nuestra sociedad ha aceptado ese costo al insertar en la Constitución una cláusula que preserva la garantía contra invasión de la privacidad. Mas en este caso la acción voluntaria del propio acusado ha franqueado el proceso de su identificación. Al acusado le indigna, y el juez de instancia acoge su reclamo, el hecho de que su retrato hubiese llegado a formar parte de un fichero o colección mantenida por la policía para utilizarse como recurso y arma de la investigación criminal. Aparte de que como hemos ya resuelto la entrega voluntaria de la foto y su radicación permanente con un organismo del Estado borra todo vestigio de privacidad, ha de recordarse que dicha foto vino a poder de la policía como resultado de dos investigaciones previas al caso de hurto mayor, promovidas por quejas de las monjas Carmelitas y Wells Fargo en las que se trazó al acusado como el individuo de conducta sospechosa. El admitido costo social de la garantía constitucional no llega al extremo de limitar a las de personas convictas las fotos al alcance de los agentes de orden público en su labor investigativa.

*Se expedirá el auto de certiorari y la resolución recurrida será anulada.*

El Juez Presidente Señor Trías Monge disiente sin opinión.

---

pone en libertad al culpable. La disparidad en algunos casos entre el error cometido por el policía y la suerte inesperada del acusado culpable al aplicar la regla, es contraria a la idea de proporcionalidad, esencial al concepto de justicia. Así, a pesar de que se supone que la regla disuada la actividad ilegal de la policía en parte fortaleciendo el respeto a los valores de la Cuarta Enmienda, de aplicarse indiscriminadamente surtiría el efecto contrario de generar falta de respeto a la ley y a la administración de justicia."