CC-1998-482                                                      1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>        Peticionario<br><br>           v.<br><br>Eugenio González Cardona<br>        Recurrido | Certiorari<br><br>2001 TSPR 50 |
| --- | --- |

Número del Caso: CC-1998-482

Fecha: 4/abril/2001

Tribunal de Circuito de Apelaciones:
                                 Circuito Regional I

Juez Ponente:
                                 Hon. Charles A. Cordero Peña

Oficina del Procurador General:
                                 Lcdo. Miguel A. Santana Bagur
                                 Procurador General Auxiliar

Abogado de la Parte Recurrida:
                                 Lcdo. Eduardo René Estades

Materia: Ley de Contribución sobre Ingresos

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

        Vs.                              CC-1998-482          Certiorari

Eugenio González Cardona

     Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 4 de abril de 2001.

Nos corresponde determinar si tiene efecto retroactivo la norma constitucional que establecimos en R.D.T. Construction Corp. v. Colón Carlo, res. el 28 de agosto de 1996. En dicho caso resolvimos que cuando una entidad gubernamental emite un *subpoena duces tecum* contra un banco o institución financiera para que entregue documentos relacionados con las transacciones o cuentas bancarias de una persona objeto de una investigación, la persona afectada debe ser notificada de tal requerimiento. Por entender que dicha norma efectivamente tiene carácter retroactivo, confirmamos.

I.

En agosto de 1995, el Departamento de Hacienda de Puerto Rico comenzó una investigación referente a la responsabilidad contributiva del recurrido, Eugenio González Cardona.

Como parte de la investigación, el 16 de marzo de 1996, el Secretario del Departamento de Hacienda expidió un *subpoena duces tecum* con el propósito de obtener ciertos documentos e información relacionada con las cuentas bancarias que tenía González Cardona en la Cooperativa de Ahorro y Crédito Hermanos Unidos (en adelante, Cooperativa). González Cardona no fue notificado de la expedición del *subpoena decus tecum* dirigido a la Cooperativa.

En 1997 y como consecuencia de la investigación del Departamento de Hacienda, González Cardona fue acusado criminalmente de cometer tres violaciones a la Ley de Contribuciones Sobre Ingresos. Específicamente, se le acusó de incumplir, de manera voluntaria e intencional, con la obligación legal de rendir, en el término prescrito por la ley, las planillas correspondientes a los años 1991, 1992 y 1993.

Así las cosas y luego de varios incidentes procesales, el Tribunal de Primera Instancia, a solicitud de González Cardona, suprimió la evidencia obtenida por el Departamento de Hacienda relacionada con las cuentas bancarias que tenía González Cardona en la Cooperativa. El tribunal resolvió que la referida evidencia fue obtenida ilegalmente, en violación al Artículo II, Sección 10 de la Constitución de Puerto Rico. Esto en vista de que, a tenor con lo resuelto en R.D.T. Construction Corp. *supra*, el Departamento de Hacienda tenía que haberle notificado a González Cardona de su intención de requerir los referidos documentos.

Inconforme, el Estado, representado por el Procurador General, acudió ante el Tribunal de Circuito de Apelaciones, el cual confirmó, aunque por distintos fundamentos, la determinación del *tribunal a quo.* De dicha determinación recurre el Procurador General ante nos. Con el beneficio de los escritos sometidos por las partes, estamos en posición de resolver.

II.

Para atender adecuadamente la controversia en el caso de autos resulta pertinente exponer un breve recuento acerca de las normas relativas a la facultad de investigación del Departamento de Hacienda. Veamos.

La sección 6121 (a) del Código de Rentas Internas, 13 L.P.R.A. sec. 8121, establece el alcance y los límites de la facultad investigativa del Departamento de Hacienda:

> (a)... Con el fin de determinar la corrección de cualquier planilla o declaración, o con el fin de preparar una planilla cuando ninguna se hubiere rendido, el Secretario podrá, por conducto de cualquier funcionario o empleado del Departamento de Hacienda, examinar cualesquiera libros, papeles, constancias o memorandos pertinentes a las materias que deben incluirse en la planilla o declaración, y podrá requerir la comparecencia de la persona que rinde la planilla o declaración o la de cualquier oficial o empleado de dicha persona, o la comparecencia de cualquier otra persona que tenga conocimiento tocante al asunto de que se trate, y tomarles declaración con respecto a las materias que por ley deban incluirse en dicha planilla o declaración, con facultad para tomar juramentos a dicha persona o personas.

Al interpretar la derogada sección 413 (a) de la Ley de Contribución Sobre Ingresos, equivalente a la disposición antes citada, resolvimos en Secretario de Hacienda v. Tribunal Superior, 81 D.P.R. 666 (1960) y reiteramos posteriormente en Pueblo v. Fraguada, 105 D.P.R. 537 (1977), que la facultad del Secretario de Hacienda de examinar los libros o documentos relacionados con materias objeto de investigación, se extendía a otras personas, además del contribuyente, que tuvieran récords o información pertinente a la determinación de responsabilidad contributiva de la persona objeto de investigación. Así, por ejemplo, señalamos que esto incluía los bancos con los que el contribuyente había realizado negocios bancarios.

Indicamos, además, que los contribuyentes carecían de interés en los libros y los récords que mantenía el banco ya que estos eran propiedad de éste. Por tal razón, concluimos que a los contribuyentes, en ese contexto, no les cobijaba la protección constitucional contra registros, incautaciones y allanamientos irrazonables, reconocida tanto en la Sección 10 del Artículo II de Nuestra Constitución, como en la Cuarta Enmienda de la Constitución de Estados Unidos.

Varias décadas más tarde, las normas expuestas anteriormente fueron alteradas por este Tribunal en R.D.T. Construction Corp., *supra*. En dicho caso reconocimos, por primera vez, que un ciudadano tiene una expectativa de intimidad sobre los documentos que entrega a una institución financiera, ya que en el Puerto Rico moderno es prácticamente una necesidad el recurrir a las instituciones bancarias para participar adecuadamente en la vida económica. Las entidades financieras requieren y reciben documentos que, además de informar sobre la situación económica de sus clientes, revela patrones y estilos de vida. Los clientes de dichas instituciones someten dicha información con un propósito limitado y esperan que, de ordinario, ésta sea examinada solamente por oficiales de la institución. Por esta razón, cuando una entidad gubernamental emite un *subpoena duces tecum* contra un banco o institución financiera para que entreguen información y documentos en su posesión relacionados con una investigación, la persona afectada debe ser notificada expeditamente de tal requerimiento.

### III.

**Al momento de ocurrir los hechos** que nos ocupan, es decir, a principios de 1996, cuando el Departamento de Hacienda expidió el *subpoena decus tecum*, la norma prevaleciente no exigía que se notificase al ciudadano objeto de una investigación que se estaban requiriendo de determinada institución financiera ciertos documentos relacionadas con sus cuentas bancarias. No obstante, al **momento de adjudicación del caso de marras**, ya habíamos resuelto en R.D.T. Construction Corp., *supra*, que en aquellas circunstancias la persona objeto de una investigación tiene derecho a la referida notificación.

De manera que, la controversia aquí se circunscribe a determinar si en el caso de autos es de aplicación la doctrina que reconoce, en ciertos casos, efecto retroactivo a una nueva norma de carácter penal adoptada jurisprudencialmente. Veamos.

### IV.

Es doctrina reconocida que una norma jurisprudencial de carácter penal debe tener efecto retroactivo en aquellas situaciones en que la nueva norma pautada determina que la conducta está inmune a castigo, expande el alcance de una defensa disponible al acusado, o restringe la pena por determinado delito. Ernesto Chiesa, II- Derecho Procesal Penal, sec. 19.4. (Editorial Forum 1992).

Nuestra posición sobre la retroactividad o la irretroactividad de la norma jurisprudencial de carácter penal, ha estado íntimamente ligada a las normas adoptadas por el Tribunal Supremo de Estados Unidos. Así, en Rivera Escuté v. Jefe de Penitenciaría, 92 D.P.R. 765 (1965), adoptamos la norma esbozada en Linkletter v. Walker, 381 U.S. 518 (1965). Dicho caso estableció los requisitos para determinar si debía darse aplicación retroactiva a la decisión de un tribunal que enunciaba una nueva norma de carácter penal[1]. Linkletter, *supra*, resolvió que la norma de exclusión de evidencia enunciada en Mapp v. Ohio, 367 U.S. 643 (1961), no aplicaría a casos ya finales. Posteriormente, en Johnson v. New Jersey, 384 U.S. 719 (1966) se utilizó el mismo análisis de Linkletter, *supra*, para concluir que no se aplicaría, ni siquiera a casos pendientes de revisión directa, la norma pautada en Escobedo[2] y Miranda[3].

Sin embargo, la norma de Linkletter, *supra*, fue reexaminada en U.S. v. Johnson, 457 U.S. 537, (1982), en el cual se estableció una distinción entre aquellas convicciones que habían advenido finales y aquellas que estaban pendientes de revisión directa. Determinó el Tribunal que, en aquellos casos al amparo de la Cuarta Enmienda de la Constitución de Estados Unidos, la nueva norma jurisprudencial sería aplicada retroactivamente a todos aquellos casos

---

[1] Los criterios a considerarse, al amparo de Linkletter, *supra*, eran: el propósito que persigue la norma recién establecida, el grado de confianza generado por la antigua, y el impacto que tendría en la administración de la justicia la aplicación retroactiva de la nueva norma.

[2] Escobedo v. Illinois, 378 U.S. 478 (1964).

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

que no hubiesen advenido finales. La norma pautada en Johnson, *supra*, fue extendida a revisiones directas al amparo de otras cláusulas constitucionales. Shea v. Louisiana, 470 U.S. 51 (1985) (Quinta Enmienda); Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987)(prohibición de recusaciones perentorias al jurado por motivos raciales).

En Griffith, *supra*, el Tribunal Supremo de Estados Unidos hizo extensiva la aplicación retroactiva de todas las normas constitucionales de carácter penal a todos aquellos casos que al momento de su adopción no hubieran advenido finales. Así dictaminó:

> In Justice Harlan's view, and now in ours, failure to apply a newly declared constitutional rule to criminal cases pending on direct review **violates basic norms of constitutional adjudication.** Griffith, 107 S. Ct. 708, 713 (1987)....... We therefore hold that a new rule for the conduct of criminal prosecutions **is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final,** with no exceptions for cases in which the new rule constitutes a clear break with the past. Id. a la pág. 716. (Enfasis nuestro).

En conclusión, según los parámetros constitucionales esbozados por el Tribunal Supremo de los Estados Unidos, una nueva norma jurisprudencial de aplicación a los procesos penales, tiene efecto retroactivo y es de aplicación a todos aquellos casos que al momento de la adopción de la nueva norma **no hayan advenido finales y firmes.**[4] Dichos parámetros son de aplicación a los casos estatales. Griffith, *supra*.

Por otro lado, y como consecuencia de la aceptación que hoy hacemos de la normativa pautada en Johnson, *supra*, y en Griffith, *supra*, queda modificada nuestra decisión de Rivera Escuté, *supra*, en lo relativo a la adopción que hicimos en ese caso de los criterios sobre retroactividad esbozados en Linkletter, *supra*.

Con este trasfondo doctrinal en mente es que debemos considerar los hechos en el presente caso.

V.

---

[4] La norma difiere en aquellos casos en que el fallo del tribunal ha advenido final y firme y se trata de revisar colateralmente. Véase Teague v. Lane, 489 U.S. 288 (1989) y su progenie.

En el presente caso el Departamento de Hacienda expidió el *subpoena decus tecum* en marzo de 1996. En ese momento no habíamos resuelto R.D.T. Construction Corp., *supra.* Dicho caso fue resuelto en agosto de 1996.

Sin embargo, González Cardona fue acusado en 1997, es decir, cuando ya habíamos resuelto R. D. T. Construction Corp., *supra*. A partir de nuestros pronunciamientos en dicho caso se le exige a la entidad gubernamental investigadora que notifique a la persona objeto de la investigación, del requerimiento de documentos hecho a la institución financiera. La falta de notificación es una defensa, de rango constitucional, que le permite al acusado solicitar, en el proceso penal en su contra, la supresión de la evidencia obtenida de la institución financiera sin su consentimiento o sin orden judicial.

A tenor con los principios anteriormente expuestos, resolvemos que la nueva norma constitucional establecida jurisprudencialmente en R.D.T. Construction, Corp. , *supra*, tiene efecto retroactivo y es de aplicación a todos aquellos casos que al momento de la adopción de la nueva norma, no hayan advenido finales y firmes. De manera que, dado a que al momento de adjudicación, la norma vigente en nuestra jurisdicción es la pautada, estimamos que ésta debe ser de aplicación al caso de autos.

Cabe señalar que la controversia ante nos en R.D.T. Construction Corp., *supra*, era una de naturaleza civil (la legalidad de un *subpoena duces tecum* emitido por la Oficina de la Contralora contra un Banco para obtener copia de las cuentas bancarias de una corporación privada y su accionista principal). Sin embargo, en aquella ocasión, reconocimos la posibilidad de que los hallazgos de los informes preparados por la Oficina del Contralor pudieran ser usados para iniciar acciones criminales. Animados por esta posibilidad, dictaminamos que era imperioso que en el futuro los métodos investigativos utilizados por la Oficina del Contralor cumpliesen estrictamente todas las salvaguardas que, a la luz de normas constitucionales, surgieran de la Opinión.

En el presente caso, son los hallazgos de una investigación llevada a cabo por el Departamento de Hacienda, en la cual se utilizaron documentos sometidos por el Sr. González Cardona a la Cooperativa, sin que mediara notificación al investigado, los que han culminado en un proceso penal contra el acusado. No vemos razón para un trato diferente entre las investigaciones llevadas a cabo por la Oficina del Contralor y aquellas llevadas a cabo por el Departamento de Hacienda.

Esta es la norma vigente en nuestra jurisdicción al momento de esta revisión. Por tratarse de una norma que provee una defensa de rango constitucional a un acusado, cuyo caso, al momento de adoptarse dicha norma no había advenido final y firme, procede su aplicación.

Por los fundamentos expuestos procede confirmar la sentencia dictada por el Tribunal de Circuito de Apelaciones. Se dictará la sentencia correspondiente.


                                    Federico Hernández Denton
                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

       Vs.                           CC-1998-482         Certiorari

Eugenio González Cardona

     Recurrido

SENTENCIA

San Juan, Puerto Rico, a 4 de abril de 2001.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

El Pueblo de Puerto Rico

     Peticionario

        v.                       CC-1998-482         CERTIORARI

Eugenio González Cardona

     Acusado-recurrido

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 4 de abril de 2001

        <u>Disentimos</u>; realmente <u>no</u> nos queda otro remedio. En el día de hoy, una mayoría de los integrantes del Tribunal, en una acción inusitada e incomprensible, confirma una sentencia emitida por el Tribunal de Circuito de Apelaciones, <u>la cual es claramente errónea</u>.

        Al así actuar, el Tribunal: <u>pasa por alto el hecho</u> de que al establecer la norma jurisprudencial --en el caso de <u>R.D.T.Construction Corp.</u> v. <u>Colón Carlo</u>, 141 D.P.R. 424 (1996)-- le dimos <u>efecto prospectivo</u> a la norma que hoy aplica de forma retroactiva; <u>hace caso omiso del hecho</u> de que las circunstancias y hechos específicos del presente caso son <u>casi idénticos</u> a los hechos y

circunstancias del mencionado caso de <u>R.D.T. Construction Corp</u>, ante, hechos y circunstancias que lo llevaron a <u>no</u> aplicar en dicho caso la norma que establecía en el mismo; e <u>ignora el hecho</u> de que, en el presente caso, existe una circunstancia o hecho adicional que todavía hace más improcedente la aplicación al presente caso de la norma establecida prospectivamente en <u>R.D.T. Construction Corp.</u>, ante.[5]

I

Durante el mes de <u>agosto de 1995</u>, el Departamento de Hacienda de Puerto Rico comenzó una <u>investigación administrativa</u> en torno a la responsabilidad contributiva del aquí recurrido, Eugenio González Cardona; en específico, por éste alegadamente haber incumplido, de forma voluntaria e intencional, con la obligación legal de rendir las planillas correspondientes a los años contributivos de 1991, 1992 y 1993, dentro del término prescrito por ley.

A esos fines, y al amparo de las Secciones 6121 y 6128 del Código de Rentas Internas de 1994, 13 L.P.R.A. secs. 8121 y 8128 --las cuales le confieren autoridad al Secretario de Hacienda para examinar libros, citar testigos a declarar o para requerir la producción de libros, papeles o constancias en el curso de una investigación legítima-- dicho funcionario expidió, <u>el 15 de marzo de 1996</u>, un *subpoena duces tecum*, dirigido el mismo a la Cooperativa de Ahorro y Crédito Hermanos Unidos, con el propósito de obtener ciertos documentos e información relacionada con las cuentas y transacciones económicas del recurrido González Cardona en dicha institución durante los aludidos años. Dicho *subpoena duces tecum* fue diligenciado por el Agente Especial del Negociado de Evasión Contributiva del antes mencionado Departamento, señor Edmundo Santiago Rivera, <u>el día 18 de marzo de 1996</u>; comenzándose

---

[5] La Mayoría, además, y como consecuencia de la interpretación equivocada que hace de una jurisprudencia del Tribunal Supremo de los Estados Unidos, suprime erróneamente una evidencia por razón de no haber el Estado cumplido con una norma o requisito que <u>no</u> se exigía al momento en que el Estado actuó con el propósito de obtener dicha evidencia.

a recibir los documentos requeridos de la Cooperativa en el Departamento de Hacienda aproximadamente dos (2) meses más tarde, <u>esto es</u>, <u>durante el mes de mayo de 1996</u>. El recurrido González Cardona <u>no</u> fue notificado de la expedición de este *subpoena* *duces* *tecum* dirigido a la Cooperativa.

<u>El Agente Especial Santiago Rivera, sin embargo, intentó notificar o citar personalmente al recurrido González Cardona para que compareciera al Departamento de Hacienda el día 28 de marzo de 1996</u>, mediante requerimiento a esos fines expedido por el Secretario el día 20 de marzo de 1996, <u>pero éste se negó a recibir la mencionada citación</u>. En atención a ello, se le envió el referido requerimiento al recurrido, mediante correo certificado con acuse de recibo. <u>No</u> existe constancia <u>ni</u> recibo alguno, sin embargo, acreditativo de que el recurrido González Cardona recibiera dicho requerimiento. Este <u>no</u> se presentó al Departamento de Hacienda, según ello le era requerido en la citación, el día 28 de marzo de 1996.

Como consecuencia de la investigación administrativa realizada por el Departamento de Hacienda, Eugenio González Cardona fue acusado, ante la Sala Superior de San Juan del Tribunal de Primera Instancia de tres (3) violaciones a la Ley de Contribución Sobre Ingresos de Puerto Rico, por alegadamente incumplir, de manera voluntaria e intencional, con la obligación legal de rendir planillas de contribución sobre ingresos correspondientes a los años contributivos 1991, 1992 y 1993, dentro del término prescrito por ley.

Llegado el día de la celebración del juicio en su fondo, y habiendo comenzado el proceso de desinsaculación del jurado que habría de intervenir en el mismo como juzgador de los hechos, la defensa radicó una moción en la cual solicitó, <u>por el fundamento de que no se había cursado la debida notificación al recurrido</u>, la supresión de cierta evidencia documental en poder del ministerio público, entre las cuales se encontraba la documentación que el Departamento de Hacienda había obtenido de la Cooperativa de Ahorro y Crédito Hermanos Unidos.

El tribunal de instancia, no obstante la objeción del ministerio fiscal, decidió dilucidar la cuestión planteada al amparo de las disposiciones de la Regla 9(c) de las

Reglas de Evidencia, celebrando una vista a los fines de escuchar el testimonio del Agente Especial Santiago Rivera respecto al diligenciamiento de los requerimientos expedidos por el Secretario de Hacienda.

El tribunal de instancia suprimió la evidencia obtenida por el Departamento de Hacienda de la antes mencionada Cooperativa de Ahorro y Crédito Hermanos Unidos. Citando el caso de R.D.T. Construction Corp. v. Colón Carlo, ante, determinó que el recurrido González Cardona tenía derecho a que el Departamento de Hacienda le notificara a él de su intención de requerir los documentos en controversia de la referida Cooperativa y que, no habiéndolo así hecho dicha Agencia, procedía decretar la supresión de dicha evidencia.

Inconforme, el Estado acudió ante el Tribunal de Circuito de Apelaciones, vía certiorari, en revisión de dicha determinación. Dicho foro judicial confirmó el dictamen del tribunal de instancia, aun cuando por otros fundamentos. Razonó el foro apelativo intermedio --citando a H.M.C.A. v. Colón Carlo, 133 D.P.R. 145 (1993)-- que: en el presente caso lo que había ocurrido era un "registro administrativo sin orden judicial"; que el recurrido tenía una expectativa razonable de intimidad sobre los documentos bancarios; y que el Estado no había demostrado que existieran las circunstancias que lo relevan de obtener una orden judicial, expedida en virtud de una determinación de causa probable, para llevar a cabo un registro.

El Procurador General de Puerto Rico compareció ante este Tribunal en revisión, vía certiorari, de la decisión emitida por el Tribunal de Circuito de Apelaciones, imputándole a dicho foro haber errado:

> "...al resolver, en las circunstancias particulares del presente caso, que el requerimiento de documentos en virtud del cual se obtuvo la evidencia suprimida por el Tribunal de Primera Instancia, constituyó un registro administrativo realizado sin orden judicial." (Énfasis suplido.)

Expedimos el auto. En el día de hoy, una mayoría de los integrantes del Tribunal confirma la sentencia emitida por el foro apelativo intermedio. Diferimos; veamos por qué.

II

La correcta solución, y entendimiento, de la controversia planteada en el presente caso hace necesario que hagamos un poco de historia en cuanto a la evolución de nuestra jurisprudencia en esta materia. Como certeramente señala el Procurador General de Puerto Rico, en el excelente alegato que radicara en el presente caso, en Secretario de Hacienda v. Tribunal Superior, 81 D.P.R. 666 (1960), expresamos --al interpretar la derogada Sección 413(a) del Código de Rentas Internas, la cual es idéntica a la vigente Sección 6121(a) del

Código de 1994-- que la facultad de investigación del Secretario de

Hacienda:

> "...es de naturaleza inquisitiva. Tal facultad es indispensable para que dicho funcionario pueda cumplir su obligación de cobrar las contribuciones sobre ingresos impuestas por ley. Dicha sección, dado el fin público que persigue, debe ser interpretada liberalmente. El alcance del examen que el Secretario de Hacienda puede llevar a cabo, ya a su propio requerimiento o ya mediante el auxilio de una orden del Tribunal Superior, cuando el contribuyente se negare a permitir el examen, se rige por la pertinencia que tengan los libros, papeles, etc., a ser examinados, con las materias que deban incluirse en la planilla objeto de investigación." Id., pág. 672.

En el antes mencionado caso expresamos, además, que los poderes

concedidos en la ley:

> "...se extienden a todas las personas, además del propio contribuyente, que tengan récords o información pertinente a la determinación de la responsabilidad contributiva de la persona bajo investigación, incluyendo a un banco con quien el contribuyente ha realizado negocios bancarios."

Por último, señalamos en dicho caso que la:

> "...objeción constitucional de los contribuyentes fundada en la violación de su derecho a la protección contra registros, incautaciones y allanamientos irrazonables garantizado por la Sección 10 de l Artículo II de nuestra Constitución y la Enmienda Cuarta de la Constitución Americana, carece de méritos. La relación entre dichos contribuyentes y [la institución bancaria] es una de acreedor y deudor. Los libros y récords del banco son propiedad de éste. Por lo tanto, los contribuyentes carecen de interés en la propiedad de dichos documentos y no están protegidos por las disposiciones constitucionales que invocan ... Sin embargo, en el supuesto de que se tratara del examen de libros, récords u otros documentos propiedad de los contribuyentes, la base constitucional de la objeción, sería la irrazonabilidad, impertinencia o ausencia de necesidad de la pesquisa." (Enfasis suplido.)

Esta norma fue reiterada por este Tribunal, en el año de 1977,

en Pueblo v. Fraguada, 105 D.P.R. 537 (1977); allí expresamos que por:

> "...razón de egreso y proyección fuera del ámbito de vida íntima del individuo pierden la calidad de papeles y efectos privados y la protección de la Cuarta Enmienda, concordante de la Sec. 10 de nuestra Carta de Derechos, los cheques, hojas de depósito y estados financieros de que se desprende el cliente de un banco; y los documentos de contabilidad de ingresos entregados por el contribuyente investigado a su abogado."

Esa era la norma vigente al momento --15 de marzo de 1996-- en que el Departamento de Hacienda requirió, de la Cooperativa de Ahorro y Crédito Hermanos Unidos, la documentación referente al aquí recurrido Eugenio González Cardona y al momento --mayo de 1996-- en que dicha institución le remitió al referido Departamento la documentación requerida. Dicho de otra manera, conforme los dictámenes de este Tribunal, vigentes en dichos momentos, el Secretario de Hacienda tenía plena facultad para requerir, directamente de una institución bancaria o financiera, información pertinente a la responsabilidad contributiva de un ciudadano, sin que tuviera la obligación el Secretario de notificar a éste sobre dicho requerimiento ya que a dicho sujeto no se le reconocía interés o expectativa de intimidad sobre los documentos en cuestión.

Dicha norma, no hay duda, fue modificada por la decisión que este Tribunal emitiera en R.D.T. Construction Corp. v. Colón Carlo, ante. En dicho caso este Tribunal reconoció, por vez primera, la existencia de expectativa razonable de intimidad, de parte de un ciudadano, sobre documentos e información personal en poder de una institución bancaria.[6] Al así resolver, expresamos que en el Puerto Rico de hoy, es prácticamente una necesidad recurrir a las instituciones bancarias para participar adecuadamente en la vida económica; para esto, las

---

[6] Es por todos conocido que la Cuarta Enmienda de la Constitución de los Estados Unidos protege a los ciudadanos contra registros, allanamientos e incautaciones irrazonables. Dicha disposición establece el alcance mínimo de los derechos individuales reconocidos en el Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico. R.D.T. Construction Corp. v. Colón Carlo, 141 D.P.R. 424 (1996). Fue en atención a la Cuarta Enmienda de la Constitución Federal que la Corte Suprema de los Estados Unidos resolvió en Katz v. U.S., 389 U.S. 347 (1967), que la prohibición de registros y allanamientos irrazonables protege a las personas, no a lugares o cosas. El derecho a la intimidad, por lo tanto es un atributo de la persona que puede tornarse unas veces tangible y otras intangible, según atienda la expectativa razonable de intimidad que abrigue el individuo. La Constitución del Estado Libre Asociado de Puerto Rico proyecta su brazo protector de los derechos individuales tan lejos como se extienda la

distintas entidades financieras requieren y reciben información que revela patrones y estilos de vida de cada uno de sus clientes, así como su situación económica. Señalamos en dicho caso que el <u>criterio decisivo</u> para determinar si se trata de información protegida constitucionalmente, es la expectativa razonable de intimidad de los depositantes y que los bancos e instituciones financieras tienen el deber de salvaguardar la intimidad de sus depositantes so pena de incurrir en responsabilidad civil.

A la luz de la práctica bancaria en nuestra jurisdicción, y de la protección que nuestra Constitución provee a los ciudadanos contra intervenciones irrazonables del Estado, <u>expresamos en el citado caso de R.D.T. Construction Corp., ante</u>, que ni las empresas ni los individuos tienen por qué presumir que al proveer información a los bancos están renunciando a su expectativa de intimidad sobre la misma. Consecuencia lógica e inescapable de lo así resuelto es que la protección contra registros, allanamientos e incautaciones irrazonables se <u>activa automáticamente</u> ante cualquier intrusión potencial de parte de las autoridades  estatales sobre dichos documentos.[7]

El hecho de que, en ocasiones, nos hayamos referido a acciones estatales, como la del caso de autos, bajo la clasificación de "requerimiento de documentos" <u>no niega el hecho que realmente nos enfrentamos ante lo que constitucionalmente resulta ser un registro</u>.[8] En otras palabras, el requerimiento de documentos, luego de nuestra decisión en <u>R.D.T. Construction Corp.</u>, *ante*, <u>es, a todos los fines legales un registro</u>; ello luego de que

---

expectativa de intimidad del individuo hasta la frontera de lo que la sociedad está dispuesta a reconocer o tolerar como razonable.

[7] La doctrina aprobada por la Corte Suprema de los Estados Unidos en <u>Katz</u>, *ante*, y adoptada por nosotros en <u>R.D.T.</u> para el caso de los registros mediante el requerimiento de documentos es la norma vigente en Puerto Rico, rechazando así cualquier limitación a la regla de exclusión que descanse en conceptos de posesión o propiedad.

[8] Aclaramos que aunque generalmente los conceptos "registro", "allanamiento" e "incautación" son abordados conjuntamente, <u>realmente no son lo mismo</u>. Según explica Resumil "[p]ueden producirse registros sin allanamiento previo así como incautaciones sin que haya precedido alguno de los otros dos eventos.

El término "allanamiento" se define como "la entrada de la fuerza pública en un recinto cerrado" o la entrada "en casa ajena contra la voluntad del dueño". La Regla 229 de Procedimiento Criminal al definir la orden de allanamiento alude a éste como mandamiento para "buscar y ocupar determinada propiedad mueble..." sin utilizar los vocablos "entrar" o "irrumpir" que caracterizan la definición semántica. La Regla 232 sobre el diligenciamiento utiliza los vocablos "sitio donde se ocupare la propiedad" y "casa o local donde se ocupó", haciendo notar que el allanamiento requiere la entrada en un lugar con el propósito de registrar.

La acción de registrar se refiere al examen o reconocimiento con atención a una búsqueda. Así la Regla 229 de Procedimiento Criminal define la orden de registro como el mandamiento expedido dirigido a buscar determinada propiedad.

La incautación se refiere a la toma de posesión u ocupación de objetos y, aunque no requiere registro previo, en el contexto de la orden de registro o allanamiento se provee también la ocupación de propiedad que sea resultado del registro."

se le extendiera a esos documentos el manto de la expectativa razonable de intimidad en el antes citado caso.

Valga señalar que un requerimiento de documentos, como el del caso de autos, no es más que la propuesta de un registro en aras de obtener el consentimiento de la otra parte. En consecuencia, toda la normativa jurisprudencial y estatutaria relativa a los registros consentidos, es de aplicación a los casos de requerimiento de documentos en que el requerido da su consentimiento. Claro está, en los casos en que el requerido rehusa acceder al registro,[9] y en ausencia de factores justificativos de un registro sin orden, la autoridad administrativa no tendrá otra opción que no sea atender fielmente al mandato constitucional de obtener una orden judicial basada en causa probable.[10] E.L.A. v. Coca Cola Bott. Co., ante.

La jurisprudencia interpretativa de la garantía contra registros y allanamientos irrazonables ha hecho extensiva la misma tanto a registros, allanamientos e incautaciones de índole penal, como administrativa, y ha creado una presunción de invalidez cuando éstos se llevan a cabo sin orden

---

[9] La Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. Sec. 2192, dispone que toda persona a la que se le solicite información, conforme se autoriza en esta sección, podrá impugnar la solicitud de la agencia por medio del procedimiento adjudicativo según se establece en la ley especial de que se trate y en las secs. 2151 a 2168 de la ley. La impugnación sólo podrá fundamentarse en que el requerimiento de información es irrazonable o excede la autoridad de la agencia por no tener relación alguna con la zona de intereses contemplados en la ley o leyes de que se trate.

Por supuesto, la persona a quien se requieren los documentos puede invocar su privilegio constitucional de no incriminarse, en cuyo caso podrá ser compelida a producir la información requerida por la agencia mediante orden judicial expedida por el Tribunal de Primera Instancia; en cuyo caso el tribunal ordenará que no podrá usarse dicha información en ningún proceso criminal contra la persona que suministró la información. 3 L.P.R.A. Sec. 2193.

[10] Sobre el quantum de prueba requerido para determinar causa probable para expedir órdenes de registro, allanamiento o incautación, hemos dicho que ya que el grado de intrusión con la intimidad y dignidad del intervenido es, en suma, generalmente más intenso en los registros penales que en los administrativos, se justifica estándares diferentes, menos rigurosos, o para fijar la naturaleza de la prueba necesaria para establecer causa probable en casos de registros administrativos. Mientras estos adquieran más visos de carácter penal, sin embargo, más se acercarán los dos géneros de registro. Si el objetivo primario de un registro administrativo es obtener evidencia para un proceso penal, deberá cumplirse con las normas tradicionales exigibles en las causas de naturaleza criminal. Del otro lado, si en el curso de una inspección civil bona fide se descubre prueba utilizable en un proceso penal, ello de por sí no invalidará el registro. E.L.A. v. Coca Cola Bott. Co., ante.

Ya hemos dicho que en el caso de los registros administrativos la razonabilidad del registro solicitado dependerá de que la investigación que se lleve a cabo esté dentro de la autoridad conferida por la ley; que el requerimiento no sea demasiado indefinido; y que la información solicitada sea razonablemente pertinente al asunto específico bajo investigación. H.M.C.A., ante. Además, recordemos la justificación de casos de emergencia.

judicial previa. <u>E.L.A.</u> v<u>. Coca Cola Bott. Co.</u>, 115 D.P.R. 197, 207 (1984).

Ante la ausencia de una orden judicial que autorice la intervención, el

Ministerio Público viene en la obligación de demostrar la existencia de

circunstancias que hicieron innecesaria la obtención de la orden judicial.

Véase: <u>Pueblo</u> v. <u>Vázquez Méndez</u>, 117 D.P.R. 170 (1986); <u>Pueblo</u> v. <u>Lebrón</u>,

108 D.P.R. 324 (1979).[11]

En nuestro ordenamiento constitucional, la razonabilidad de un requerimiento de

documentos emitido mediante subpoena (subpoena duces tecum), <u>depende de</u>: que la

investigación que se lleve a cabo esté dentro de la autoridad conferida por la ley al

funcionario que expide el requerimiento; que el requerimiento no sea demasiado indefinido;

y que la información solicitada sea razonablemente pertinente al asunto específico bajo

investigación. Véase <u>H.M.C.A.</u> v. <u>Colón Carlo</u>, ante.[12]


                                      III

En vista a todo lo anteriormente expuesto, <u>no hay duda de que la</u>

<u>determinación del Tribunal de Circuito de Apelaciones</u> --a los efectos de

---

[11] <u>Pueblo en interés del menor N.O.R.</u>, 136 D.P.R. 949 (1994). Por supuesto, la jurisprudencia ha establecido distinciones entre los métodos investigativos para efectos de determinar la razonabilidad de la intervención. De ese modo, se han aplicado distintos criterios dependiendo, por ejemplo, si se trata de allanamiento de hogares o negocios; de inspecciones administrativas de establecimientos comerciales; o si la investigación está limitada a la entrega de documentos. Véanse <u>E.L.A.</u> v. <u>Coca Cola Bottling Co.</u>, *ante*; <u>H.M.C.A.</u>, *ante*.

[12] Es necesario acentuar y distinguir aquí lo resuelto en los casos normativos relativos a registros, allanamientos e incautaciones de índole administrativos y los cuales se constituyen en la trilogía <u>E.L.A.</u> v. <u>Coca Cola Bottling Co.</u>, *ante*; <u>H.M.C.A.</u> v. <u>Colón Carlo</u>, *ante*; y <u>R.D.T. Construction Corp.</u> v. <u>Colón Carlo</u>, *ante*.

En <u>Coca Cola</u>, *ante*, nos enfrentamos a un proceso administrativo de allanamiento, registro e incautación con orden. Allí resolvimos que las investigaciones administrativas están sujetas, por norma general, a la garantía provista por el Art. II, Sec. 10 de la Constitución de Puerto Rico y, con ello, al requisito de razonabilidad y causa probable. Valga señalar que desde entonces distinguíamos entre un requerimiento y una incautación de documentos como conceptos distintos.

En <u>H.M.C.A.</u> v. <u>Colón Carlo</u>, *ante*, estuvimos ante un caso de allanamiento y registro, por lo cual se determinó que la agencia administrativa de que se trate necesita de una autorización judicial para poder irrumpir y registrar en los archivos de la parte que reclama, con derecho, una expectativa razonable de intimidad.

<u>R.D.T. Construction Corp.</u>, *ante*, se ocupa de un registro, como el del caso de autos, mediante el requerimiento de documentos en poder de una institución bancaria. En este caso resolvimos que es necesario que la persona que abriga la expectativa razonable de intimidad sobre dichos documentos sea notificada del registro solicitado. Aclaramos, definitivamente, que los individuos tienen derecho a albergar una expectativa razonable de intimidad sobre los documentos bancarios que origine y que estén en poder de la institución bancaria. Por lo tanto, la protección constitucional al derecho de intimidad adquiere plena vigencia ante los requerimientos de documentos y se activa, de esa forma, el requisito de razonabilidad en el registro y el mandato general de la obtención de una orden judicial previa basada en causa probable para el registro. La

que el recurrido González Cardona tenía una expectativa razonable de intimidad sobre los documentos en poder de la Cooperativa, razón por la cual lo ocurrido en el presente caso fue un "registro"-- es una correcta en derecho.

Incidió, sin embargo, el referido foro apelativo intermedio al confirmar, dados los hechos particulares del presente caso, la determinación del foro de instancia de suprimir la evidencia en el mismo. Veamos por qué.

Resulta importante enfatizar, y recordar, que este Tribunal en el citado caso de R.D.T. Construction Corp., ante, sostuvo la validez del requerimiento allí impugnado, no obstante el hecho de que, como en el presente caso, no se le había notificado de dicho requerimiento a la persona afectada; ello por razón de que consideramos razonable el requerimiento en controversia y debido al hecho de que se había actuado el amparo de la norma jurisprudencial hasta entonces vigente. En otras palabras, a la nueva norma que establecimos en dicho caso le dimos efecto prospectivo.

Somos del criterio que igual solución se impone en el presente caso. El recurrido González Cardona, no hay duda, conforme lo resuelto, en fecha posterior, en R.D.T. Construction Corp., ante, tenía una expectativa razonable de intimidad sobre la documentación en posesión de la Cooperativa de Ahorro y Crédito Hermanos Unidos. Tampoco hay duda, por otro lado, que nuestro ordenamiento jurídico le concede facultad al Secretario para examinar libros, papeles, constancias, etc., en la realización de una investigación contributiva y para ello tiene la facultad de citar testigos y requerir la producción de documentos. Por otro lado, el requerimiento que hizo el Secretario a la mencionada Cooperativa estaba claramente definido y la información solicitada era pertinente a la investigación que llevaba a cabo.

En otras palabras, y al igual que en el caso de R.D.T. Construction Corp., ante, en el presente caso existían hechos concretos que motivaron

---

razonabilidad del registro sin orden, señalamos, se determinará a la luz de los tres criterios ya esbozados.

la intervención e investigación del Secretario; la autoridad legal del Secretario de Hacienda para así actuar era incuestionable; y la información solicitada era pertinente a la investigación que se estaba realizando. No hay duda, por otro lado, que el recurrido González Cardona --al igual que el sujeto en el caso de R.D.T. Construction Corp., ante-- no recibió dicho requerimiento.

Como indicáramos anteriormente, en R.D.T. Construction Corp., ante, sostuvimos el requerimiento impugnado, no obstante la falta de notificación, por razón de que el requerimiento era uno razonable y por el hecho de que se hizo conforme a la norma entonces vigente.[13] Una conclusión similar resulta mandatoria en el presente caso ya que la situación es prácticamente idéntica al caso de R.D.T. Construction Corp., ante.

A ello debe añadírsele el hecho de que el Departamento de Hacienda intentó, en el presente caso, citar al aquí recurrido González Cardona para una vista administrativa y éste se negó a recibir dicha citación[14]; vista administrativa en la cual el recurrido González Cardona hubiera podido levantar, entre otros planteamientos, la improcedencia del requerimiento de documentos que el Departamento de Hacienda le había hecho a la Cooperativa de Ahorro y Crédito Hermanos Unidos, sin que antes se le hubiera notificado a él de ello, y la inadmisibilidad de dicha evidencia en un procedimiento administrativo, o judicial, sin su consentimiento o sin la obtención de una orden judicial a esos efectos.

González Cardona prefirió o decidió, de forma voluntaria, negarse a recibir dicha citación. Su actuación nos trae a la mente lo expresado, por este Tribunal, en Hach Co. v. Pure Water Systems, Inc., 114 D.P.R. 58 (1983). En el mismo --caso en que la demandada rehusó recibir copia de la demanda

---

[13] Resulta, cuando menos curioso, que el citado caso de R.D.T. Construction Corp., ante, este Tribunal no hiciera mención alguna de la jurisprudencia federal que hoy cita en apoyo de su conclusión; sobre todo, cuando consideramos el hecho de que el Juez ponente, en ambos caos, es el mismo.

[14] La mayoría del Tribunal, al confirmar la sentencia del Tribunal de Circuito de Apelaciones, está "premiando" al recurrido González Cardona por su actividad de desprecio y displicencia hacia nuestro ordenamiento jurídico.

y del emplazamiento que le fuera enviado por correo certificado–– este Tribunal <u>sabiamente</u> expresó que:

> "Por último, es de tenerse en cuenta que en este caso la recurrente <u>tuvo una razonable oportunidad de enterarse del contenido de la demanda</u> que le fuera enviada con el emplazamiento por correo certificado a la dirección que aceptó como correcta. <u>Su actuación al rehusar recibir dicha correspondencia fue un obstáculo puesto por ella misma en el procedimiento. No puede quejarse de sus propias actuaciones</u>." (Énfasis suplido.)

En el presente caso ––al igual que la demandada en el citado caso de <u>Hach Co.</u>, ante–– <u>el recurrido González Cardona se negó a recibir una citación de manos de un oficial del Departamento de Hacienda para una vista administrativa</u>, en la cual <u>no sólo</u> se pudo haber enterado del requerimiento de documentos a la Cooperativa <u>sino que</u> en donde pudo haber hecho todos los planteamientos legales pertinentes. ¿De qué se puede quejar ahora? En nuestra opinión, <u>de muy poco</u>, si de algo.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado