EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Tomás Torres Rivera<br><br>Peticionario | Certiorari<br><br>2020 TSPR 42<br><br>204 DPR ____ |
|---|---|

Número del Caso: CC-2019-916

Fecha: 8 de mayo de 2020

Tribunal de Apelaciones:

    Región Judicial de Carolina-Guayama, Panel Especial

Abogados de la parte peticionaria:

    Lcda. Jessica E. Méndez Colberg
    Lcdo. Rolando Emmanuelli Jiménez

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Pedro Vázquez Montijo
    Subprocurador General

    Lcda. Marie Díaz De León
    Procurador General Auxiliar

    Lcda. Mónica M. Rodríguez Madrigal
    Procurador General Auxiliar

Materia: Derecho Constitucional y Derecho Procesal Penal: La unanimidad constituye un elemento consustancial al derecho fundamental a un juicio por jurado en los casos penales por delitos graves que se ventilan ante nuestros tribunales.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Tomás Torres Rivera<br><br>Peticionario | **Núm.** CC-2019-0916 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 8 de mayo de 2020

> The principle has been followed equally in reverse: if a state cannot do it constitutionally, neither can Puerto Rico.[1]

En esta ocasión, nos corresponde examinar el alcance de la decisión del Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana*, 590 US \_\_\_\_ (2020) No. 18-5924 (slip op.), en nuestro ordenamiento penal. En particular, debemos determinar si, a la luz de esa opinión, una condena dictada en virtud de un veredicto no unánime en nuestra jurisdicción transgrede las salvaguardas procesales inherentes al derecho fundamental a un juicio por jurado que garantiza la Sexta Enmienda de la Constitución de Estados Unidos.

**I.**

Al Sr. Tomás Torres Rivera se le imputó la comisión de los siguientes delitos: actos lascivos contra menores

---

[1] David Helfeld, *How much of the United States Constitution and Statutes are Applicable to the Commonwealth of Puerto Rico?* en Applicability of the United States Constitution and Laws to the Commonwealth of Puerto Rico, Proceedings of the First Judicial Conference, 110 FRD 449, 457 (1985).

de edad, Art. 133A del Código Penal de 2012, 33 LPRA sec. 5194 (3 cargos); tentativa de actos lascivos, Arts. 35, 36 y 133 del Código Penal de 2012, 33 LPRA secs. 5048, 5049 y 5149 (1 cargo), y maltrato de menores, Art. 58 de la Ley Núm. 246 de 2011, conocida como la *Ley para la Seguridad, Bienestar y Protección de Menores*, según enmendada, 8 LPRA sec. 1173 (7 cargos). Luego de la celebración del juicio en su fondo, un jurado lo encontró culpable por todos los cargos imputados. En ocho de las once acusaciones, el jurado emitió un veredicto de culpabilidad unánime. No obstante, para las tres acusaciones por actos lascivos en contra de menores de edad al amparo del Art. 133A del Código Penal, *supra*, el jurado emitió un veredicto de culpabilidad por mayoría.[2]

Inconforme, el señor Torres Rivera acudió al Tribunal de Apelaciones y señaló la comisión de tres errores. En primer lugar, sostuvo que el Tribunal de Primera Instancia había errado al denegar su solicitud de impartir una instrucción al jurado relacionada con el requisito de que su veredicto fuese unánime. Arguyó que, conforme a la Sexta Enmienda de la Constitución de Estados Unidos, la cláusula territorial contenida en ésta y lo resuelto por el Tribunal

---

[2] Para dos de los cargos la votación fue de 9-3 mientras que para uno de ellos fue de 11-1. Ante estos veredictos de culpabilidad para todos los cargos, al peticionario se le impuso una pena global de veintidós (22) años y seis (6) meses de reclusión.

Supremo de Estados Unidos en *Commonwealth of Puerto Rico v. Sánchez Valle*, 136 S. Ct. 1863 (2016), la unanimidad era un requisito indispensable para lograr una convicción penal. Como segundo señalamiento de error, el señor Torres Rivera planteó que el foro primario había errado al interpretar los artículos del Código Penal relacionados con la imposición de agravantes y el concurso de delitos. Por último, el señor Torres Rivera señaló que el Ministerio Público no probó la comisión de los delitos imputados más allá de duda razonable, por lo que procedía revocar la sentencia dictada en su contra.[3]

El 7 de octubre de 2019, el Tribunal de Apelaciones emitió una sentencia mediante la cual confirmó el dictamen del foro primario con relación a la culpabilidad del peticionario por todos los delitos imputados. En cuanto a los errores planteados relativos a los agravantes, el foro apelativo intermedio devolvió el caso al Tribunal de Primera Instancia para que revaluara las penas impuestas. Al confirmar los veredictos de culpabilidad emitidos por

---

[3] Concomitantemente al desarrollo del pleito a nivel apelativo, el señor Torres Rivera presentó una solicitud de fianza en apelación ante el Tribunal de Primera Instancia. Celebrada la vista correspondiente, el foro primario declaró no ha lugar esa solicitud del peticionario. Inconforme, el peticionario acudió al Tribunal de Apelaciones mediante un recurso de apelación, el cual fue acogido como un *certiorari* y consolidado con el recurso de apelación por vía del cual solicitó la revocación de su condena. Posteriormente, el recurso de *certiorari* fue denegado.

el jurado por mayoría, el Tribunal de Apelaciones destacó lo resuelto por este Tribunal en *Pueblo v. Casellas Toro*, 197 DPR 1003 (2017), a los efectos de que el requisito de unanimidad no constituía un derecho constitucional fundamental aplicable a Puerto Rico. *Véase Sentencia del Tribunal de Apelaciones* de 7 de octubre de 2019, en las págs. 37, 51.

Así las cosas, el 22 de octubre de 2019, el señor Torres Rivera solicitó al Tribunal de Apelaciones que reconsiderara su dictamen y paralizara los procedimientos hasta tanto el Tribunal Supremo de Estados Unidos emitiera su opinión en el caso de *Ramos v. Louisiana*, *supra*. Según sostuvo, si el máximo foro de Estados Unidos resolvía que el requisito de unanimidad en un veredicto condenatorio aplicaba a los estados, él prevalecería en su primer señalamiento de error. Mediante resolución notificada el 12 de noviembre de 2019, el foro apelativo intermedio denegó la solicitud de reconsideración y paralización de los procedimientos.

Aún insatisfecho, el 11 de diciembre de 2019, el señor Torres Rivera presentó una petición de *certiorari* ante este Tribunal acompañada por una *Solicitud de paralización de los procedimientos*. En su recurso de *certiorari*, planteó –

entre otras cosas-[4] que el Tribunal de Apelaciones había

errado al no paralizar los procedimientos y confirmar la

sentencia condenatoria dictada en su contra basada en un

veredicto no unánime por parte de un jurado. Así, reiteró

---

[4] En su petición de *certiorari*, el señor Torres Rivera presentó tres (3) señalamientos de error adicionales relacionados con el quantum de prueba y la procedencia de atenuantes en su caso particular. Específicamente, los señalamientos de error presentados fueron los siguientes:

> PRIMER ERROR: Erró el Tribunal de Apelaciones, Región Judicial, Carolina-Guayama, Panel Especial, al declarar "No Ha Lugar" la *Solicitud de Paralización de los Procedimientos* hasta que el Tribunal Supremo De Estados Unidos emitiera su opinión en el caso de *Ramos v. Louisiana*, en cuanto a si la Decimocuarta Enmienda de la Constitución De Estados Unidos incorpora a los estados el requisito de que un veredicto condenatorio sea unánime, ya que es la misma controversia planteada como error ante Apelación en el presente caso, y si resuelta a favor del acusado, el Sr. Tomás Torres Rivera prevalecería respecto a que la aceptación del veredicto no unánime de culpabilidad es inconstitucional.
> SEGUNDO ERROR: Erró el Tribunal de Apelaciones, Región Judicial, Carolina-Guayama, Panel Especial, al confirmar la determinación del Tribunal de Primera Instancia de no considerar los atenuantes para efectos de la imposición de la pena.
> TERCER ERROR: Erró el Tribunal de Apelaciones, Región Judicial, Carolina-Guayama, Panel Especial, al confirmar la sentencia condenatoria emitida por el Tribunal de Primera Instancia, sin aquilatar el impacto de la prueba flaca y descarnada y el testimonio estereotipado sobre el estándar constitucional que el Estado pruebe más allá de duda razonable los elementos del delito.
> CUARTO ERROR: Erró el Tribunal de Apelaciones al determinar que se presentó prueba para establecer que el acto lascivo tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado.

*Petición de certiorari*, en la pág. 4.

los argumentos planteados ante el Tribunal de Apelaciones y mantuvo que procedía paralizar los procedimientos en su caso hasta que el Tribunal Supremo de Estados Unidos se expresara en torno a la constitucionalidad de veredictos de culpabilidad que no fueran unánimes en casos criminales. El 24 de enero de 2020, notificada el 29 de enero, este Tribunal emitió una resolución mediante la cual declaró no ha lugar la petición de *certiorari* y solicitud de paralización de procedimientos presentadas. Oportunamente, el señor Torres Rivera presentó una *Moción de reconsideración* que también fue denegada mediante resolución notificada el 3 de marzo de 2020.

Pendiente una segunda moción de reconsideración presentada el 6 de marzo de 2020, el señor Torres Rivera presentó -el 21 de abril de 2020- un escrito titulado *Moción urgente para que se tome conocimiento judicial del caso de Ramos v. Louisiana y para que se dicte un remedio de conformidad*. En ésta, indicó que el dictamen del Tribunal Supremo de Estados Unidos del 20 de abril de 2020 en el caso de *Ramos v. Louisiana*, 590 US ____ (2020) No. 18-5924 (slip op.), era dispositivo en su caso, por lo que procedía revocar la sentencia dictada en su contra. Acogida esta *Moción urgente* como una moción en auxilio de jurisdicción, el 22 de abril de 2020 ordenamos al Procurador General comparecer y mostrar causa por la cual, a la luz de lo

resuelto en *Ramos v. Louisiana, supra,* no debíamos revocar la sentencia del Tribunal de Primera Instancia en este caso.

Conforme a lo ordenado, el 1 de mayo de 2020, el Procurador General compareció mediante un *Escrito en cumplimiento de orden*. En éste, destaca, como cuestión de umbral, que "la Oficina del Procurador General, en representación del Pueblo de Puerto Rico, y debido a la jurisprudencia aplicable [...] acepta que la determinación de *Ramos v. Louisiana*, *supra*, aplica, de forma general, a Puerto Rico". Además, el Procurador General reconoce de entrada que "está conforme con que en este caso se emita una determinación a los únicos efectos de ordenar un nuevo juicio solamente en los 3 cargos que el veredicto emitido no fue unánime conforme al nuevo ordenamiento jurídico". *Véase Escrito en cumplimiento de orden*, en la pág. 2. Aclara, sin embargo, que tal concesión "está sumamente circunscrita a los hechos procesales de este caso: uno en el que está vigente en revisión directa ante este Tribunal y en el que se emitieron 3 veredictos por un jurado de forma no unánime y que se preservó el planteamiento". *Id.*

Contando con el beneficio de la comparecencia de ambas partes y en atención a la etapa procesal en la que se encuentra la controversia ante nuestra consideración, se declara con lugar la *Segunda moción de reconsideración* presentada por el peticionario y se expide el recurso de

*certiorari* únicamente en cuanto al primer señalamiento de error. Ello, con el fin de evaluar los efectos de la determinación del Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana*, *supra*, en nuestro ordenamiento penal.[5]

## II.

La Sexta Enmienda de la Constitución de Estados Unidos delimita los derechos reconocidos a los acusados a nivel de Estados Unidos en los procedimientos penales al establecer que

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

A través del tiempo, los distintos derechos enumerados en esta enmienda han sido reconocidos como derechos fundamentales para la consecución de un juicio criminal imparcial y han sido expresamente incorporados a los estados por vía de la Decimocuarta Enmienda.[6] De esta

---

[5] El 4 de mayo de 2020, el Tribunal Supremo de Estados Unidos expidió el caso *Edwards v. Vannoy*, No. 19-5807 (5th Cir.), para atender el asunto sobre el efecto retroactivo de *Ramos v. Louisiana*, 590 US ___ (2020).

[6] *Véase Duncan v. State of Louisiana*, 391 US 145, 148-49 (1968)("The test for determining whether a right extended by the Fifth and Sixth Amendments with respect to federal criminal proceedings is also protected against state action by the Fourteenth Amendment has been phrased in a variety

manera, se le han reconocido como derechos fundamentales a los imputados de delito a nivel estatal el derecho a un juicio rápido,[7] el derecho a un juicio público,[8] el derecho a presentar testigos en su favor,[9] el derecho a confrontar los testigos en su contra,[10] el derecho a un abogado[11] y, de particular pertinencia a la controversia ante este Tribunal, el derecho a un juicio por jurado.[12]

---

of ways in the opinions of this Court. The question has been asked whether a right is among those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions,' whether it is 'basic in our system of jurisprudence,' and whether it is 'a fundamental right, essential to a fair trial.'"). *Véase además*, *Grosjean v. American Press Co.*, 297 US 233, 243–244 (1936).

[7] *Klopfer v. North Carolina*, 386 US 213, 223 (1967) ("We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment.").

[8] *In re Oliver*, 333 U.S. 257, 278 (1948) (It is 'the law of the land' that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal.").

[9] *Washington v. Texas*, 388 US 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.").

[10] *Pointer v. Texas*, 380 US 400 (1965) ("We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.").

[11] *Gideon v. Wainwright*, 372 US 335, 344 (1963) ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.").

[12] *Duncan*, 391 US en las págs. 157–58 (1968) ("Our conclusion is that in the American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing

En *Duncan v. State of Louisiana*, 391 US 145 (1968), el Tribunal Supremo de Estados Unidos dictaminó que el derecho a un juicio por jurado en los procedimientos penales es consustancial a la garantía de un debido proceso de ley que permea todo el ordenamiento constitucional estadounidense. *Véase Duncan*, 391 US en la pág. 149 (1968)("Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee.").

Conviene precisar que la jurisprudencia posterior que precisó los contornos del derecho fundamental a un juicio por jurado rechazó exigir a los estados, en virtud de la Decimocuarta Enmienda, veredictos unánimes para lograr convicciones penales. *Véase Apodaca v. Oregon*, 406 US 404 (1972); *Johnson v. Louisiana*, 406 US 356, 360 (1972); *Williams v. Florida*, 399 US 78 (1970). De esta manera, resulta evidente que el Tribunal Supremo de Estados Unidos desistió de requerir total uniformidad en la incorporación

---

miscarriages of justice and for assuring that fair trials are provided for all defendants.").

a los estados del derecho fundamental a un juicio por jurado consagrado en la Sexta Enmienda.[13]

Hasta muy recientemente, pues, la jurisprudencia del Tribunal Supremo de Estados Unidos reconoció la validez de dictámenes condenatorios a nivel estatal en los cuales los veredictos del jurado no fueran unánimes.[14] Cónsono con esa tendencia, en *Pueblo v. Casellas Toro*, 197 DPR 1003, 1005 (2017), este Tribunal concluyó que el requisito de unanimidad en los veredictos condenatorios no era un derecho fundamental reconocido por el Tribunal Supremo de Estados Unidos y por lo tanto no era exigible en Puerto Rico. A esos efectos, este Tribunal acotó que la extensión a los estados del derecho a un juicio por jurado en virtud

---

[13] Nótese sin embargo que, en *Malloy v. Hogan*, 378 US 1, 10-11 (1964), el Tribunal Supremo de Estados Unidos, por voz del Juez Brennan, había matizado la importancia de la homogeneidad en la interpretación del contenido sustantivo de los derechos consagrados en la Carta de Derechos, según éstos se incorporaban a los estados en virtud de la Decimocuarta Enmienda.("The Court thus has rejected the notion that the Fourteenth Amendment applies to the States only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights.'").

[14] Luego de la decisión de *Apodaca*, *supra*, y hasta hace poco, el Tribunal Supremo de Estados Unidos reiteradamente se negó a revisar peticiones de *certiorari* que procuraban la revisión de dictámenes no unánimes a nivel estatal y exigían que se estableciera la unanimidad como un elemento esencial del derecho a un juicio por jurado. *Véase e.g.* Pet. for Cert. *Bowen v. Oregon,* O.T. 2009, No. 08-1117, *cert. denied,* 558 U.S. 815, 130 S.Ct. 52, 175 L.Ed.2d 21 (2009); Pet. for Cert. *Lee v. Louisiana*, O.T. 2008, No. 07-1523, cert. denied, 555 U.S. 823, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); Pet. for Cert. *Logan v. Florida*, O.T. 2007, No. 07-7264, cert. denied, 552 U.S. 1189, 128 S.Ct. 1222, 170 L.Ed.2d 76 (2008).

de la decisión de *Duncan*, *supra*, no implicó "cambios profusos en los procedimientos penales de los estados, en lo que respecta a los jurados configurados por menos de doce personas y al requisito de unanimidad para el veredicto condenatorio". *Id.* en la pág. 1014.

Por tanto, en *Pueblo v. Casellas Toro*, *supra*, este Tribunal concluyó que un veredicto de culpabilidad en el que concurrieran -como mínimo- nueve miembros de un jurado de doce, era válido y satisfacía los rigores del derecho a un juicio por jurado contenido en la Sexta Enmienda. *Id.* en la pág. 1019. Esa conclusión respondió al estado de derecho vigente en ese momento. De esta manera, se validó el texto de la Sección 11, cl. 2, de nuestra Carta de Derechos que permite veredictos por mayoría. ("En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve"). Const. PR Art. II, Sec. 11.

Por último, para justificar su determinación, este Tribunal subrayó que "en Puerto Rico solo aplican los derechos fundamentales de la Constitución de Estados Unidos, reconocidos por el Tribunal Supremo de Estados Unidos". *Id.* en la pág. 1019. Dado que la proporción decisoria del jurado o el requisito de un veredicto unánime

por parte de éste explícitamente no habían sido reconocidos como elementos esenciales del derecho fundamental a un juicio por jurado a nivel federal, determinamos que el requisito de unanimidad que exige la Sexta Enmienda de Estados Unidos no aplicaba a Puerto Rico.

**III.**

La normativa imperante en nuestro ordenamiento y a nivel de Estados Unidos en torno al contenido concreto del derecho a un juicio por jurado cambió significativamente con la determinación del Tribunal Supremo en el caso de *Ramos v. Louisiana*, 590 US ____ (2020) No. 18-5924 (slip op.) emitida el 20 de abril de 2020. En ese caso, el Tribunal Supremo de Estados Unidos concluyó que el derecho fundamental a un juicio por jurado garantizado por la Sexta Enmienda, según incorporado a los estados por vía de la Decimocuarta Enmienda, no admite veredictos que no sean unánimes en los casos penales que se ventilan en las cortes estatales. *Véase Ramos v. Louisiana*, *supra*, en la pág. 7 ("[I]f Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court.").

En síntesis, en *Ramos v. Louisiana*, un acusado cuestionó una sentencia dictada en el estado de Luisiana en virtud de la cual se le encontró culpable de la comisión de un delito grave luego de un veredicto de culpabilidad

por una mayoría de 10 de los 12 jurados. Como resultado de ese veredicto, fue condenado a servir una cadena perpetua sin la posibilidad de libertad condicional. Ante el Tribunal Supremo de Estados Unidos, se planteó que la unanimidad era un requisito esencial del derecho a un juicio por jurado en el ámbito penal y que cualquier disposición estatal que permitiera veredictos no unánimes por delitos graves era inconstitucional.

El Tribunal Supremo le dio la razón al acusado y revocó la sentencia dictada en su contra. Al así proceder, concluyó que el derecho a un juicio por jurado consagrado en la Sexta Enmienda requiere un veredicto unánime en un procedimiento penal en el cual se imputa la comisión de un delito grave. El razonamiento del Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana*, *supra*, despeja toda duda respecto a cómo la exigencia de un veredicto unánime constituye una protección procesal fundamental para todo acusado de un delito grave. Consecuentemente, la unanimidad del jurado representa una cualidad inmanente al derecho fundamental a un juicio por jurado de la Sexta Enmienda.

En síntesis, el análisis del máximo foro de Estados Unidos se enfrenta a la frase "jurado imparcial" de la Sexta Enmienda para deducir de ésta el contenido sustantivo y los requerimientos procesales de un juicio por jurado en el ámbito penal. Luego de un estudio histórico de ese concepto

y su inclusión en la Constitución, el Tribunal concluye que, ineludiblemente, la consecución de un juicio imparcial requiere un veredicto unánime por parte del jurado. *Véase Ramos v. Louisiana*, *supra*, en la pág. 4. ("The text and structure of the Constitution clearly suggest that the term 'trial by an impartial jury' carried with it some meaning about the content and requirements of a jury trial. One of these requirements was unanimity. Wherever we might look to determine what the term 'trial by an impartial jury trial' meant at the time of the Sixth Amendment's adoption—whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.").

### IV.

En la medida en la que el derecho a un juicio por jurado en un procedimiento penal por delito grave constituye un derecho fundamental,[15] la determinación del Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana*, *supra*, sirve para delimitar el contenido y el alcance de ese derecho. En ese sentido, el dictamen del foro de Estados Unidos instituye la unanimidad del jurado como un requisito de sustancia para lograr una convicción en un proceso penal. Es de esta

---

[15] *Véase Duncan, supra;* acápite II de esta Opinión.

manera que la unanimidad se reconoce como un corolario natural de la imparcialidad que ordena la Sexta Enmienda.

Previo a este dictamen, los contornos específicos del derecho a un juicio por jurado no habían sido delimitados con especificidad. Incluso, un análisis jurisprudencial de las garantías procesales contenidas en la Sexta Enmienda revela que su incorporación no ocurrió hasta los años sesenta, cuando la Corte Warren procuró extender a las personas acusadas en las cortes estatales las mismas protecciones aplicables en las cortes federales.[16] Como se adelantó, no es hasta el año 1968 que el Tribunal Supremo de Estados Unidos reconoce, en el caso de *Duncan*, *supra*, que el derecho a un juicio por jurado en delitos graves es un derecho fundamental aplicable a los estados en virtud de la Decimocuarta Enmienda.

En el caso de Puerto Rico, el referente jurisprudencial al derecho a un juicio por jurado de la Sexta Enmienda ocurre con anterioridad a su reconocimiento en *Duncan* como un derecho fundamental. En *Balzac v. Porto Rico*, 258 US 298 (1922), el Tribunal Supremo de Estados Unidos concluyó que algunas disposiciones de la

---

[16] Para un compendio del desarrollo de la Sexta Enmienda, sus complejidades y la incorporación de sus garantías procesales a los estados, véase Sanjay Chhablani, *Disentangling the Sixth Amendment*, 11 U. Pa. J. Const. L. 487 (2009).

Constitución de Estados Unidos no aplicaban a Puerto Rico como territorio no incorporado. *Id.* en las págs. 304-306. Según razonó, el derecho a un juicio por jurado no era de carácter fundamental, por lo que no era extensivo a todos los territorios bajo la jurisdicción de Estados Unidos. *Id.* en la pág. 309. Específicamente, el foro federal recurrió a una decisión previa para concluir lo siguiente:

> If the right to trial by jury were a fundamental right which goes wherever the jurisdiction of the United States extends, or if Congress, in framing laws for outlying territory, was obliged to establish that system by affirmative legislation, it would follow that, no matter what the needs or capacities of the people, trial by jury, and in no other way, must be forthwith established.

*Id.* (citando a *Dorr v. United States*, 195 US 138, 148 (1904)).

Estas expresiones, sin embargo, sirvieron para reafirmar la polémica teoría de incorporación territorial articulada inicialmente por el Juez White en su opinión concurrente en *Downes v. Bidwell*, 182 US 244 (1901). Bajo esta teoría, solo los derechos reconocidos como fundamentales se extendían a los territorios no incorporados bajo la jurisdicción de Estados Unidos. *Véase* Helfeld, *supra*, en la pág. 458.

A casi un siglo de las expresiones emitidas por el Tribunal Supremo de Estados Unidos en *Balzac*, resulta evidente que el paso del tiempo se ha encargado de modificar el estado de derecho vigente en aquel entonces, al punto

de que lo allí pautado respecto al derecho a un juicio por jurado ha pasado a ser letra muerta. El reconocimiento expreso de ese derecho como uno fundamental en *Duncan*, *supra*, tuvo el efecto de automáticamente hacerlo extensivo a Puerto Rico. Ello ocurrió al margen de las inextricables imbricaciones históricas de la teoría de incorporación territorial esbozadas en *Balzac*. Después de todo, independientemente de la doctrina jurídica a la que se recurra, las protecciones y garantías que emanan de los derechos que se designan como fundamentales por el Tribunal Supremo de Estados Unidos son extensibles a Puerto Rico. *Véase Casellas Toro*, 197 DPR en la pág. 1019.

En cuanto a la aplicación de los derechos fundamentales a Puerto Rico, el propio Tribunal Supremo de Estados Unidos ha aceptado que "[i]t is clear now, however, that the protections accorded by either the Due Process Clause of the Fifth Amendment or the Due Process and Equal Protection Clauses of the Fourteenth Amendment apply to residents of Puerto Rico." *Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero*, 426 US 572, 600 (1976). *Véase, además Torres v. Com. of Puerto Rico*, 442 US 465, 471 (1979) ("As in *Examining Board v. Flores de Otero* [ . . .] we have no occasion to determine whether the Fourth Amendment applies to Puerto Rico directly or by operation of the Fourteenth Amendment.").

La extensión a Puerto Rico del derecho a un juicio por jurado como derecho fundamental fue tácitamente reconocida por este Tribunal en *Pueblo v. Laureano*, 115 DPR 447 (1984), cuando dictaminó que el criterio rector al momento de determinar si una persona tenía derecho a un juicio por jurado en Puerto Rico ha de ser la severidad de la pena máxima que se le podría imponer por el delito imputado. Al así proceder, aplicó lo resuelto por el Tribunal Supremo de Estados Unidos en el caso de *Baldwin v. New York*, 399 US 66 (1970), a los efectos de que el derecho fundamental a un juicio por jurado se extendía a crímenes que acarrearan sentencias mayores de seis meses, independientemente de la clasificación o gravedad del delito.

Posteriormente, en *Pueblo v. Santana Vélez*, 177 DPR 61 (2009), se consumó, sin ambages, la teoría de que "[e]l derecho a juicio por jurado de la Enmienda Sexta es un derecho fundamental que aplica a los estados a través de la cláusula del debido proceso de ley de la Enmienda Decimocuarta y, por lo tanto, a Puerto Rico". *Id.* en la pág. 65. De esa conclusión precisamente partió el análisis esbozado en *Casellas Toro*, *supra*, en el cual se destacó que "a través del proceso de incorporación selectiva, se reconoció el derecho a un juicio por jurado en casos penales como fundamental" y que "en Puerto Rico solo aplican los derechos fundamentales de la Constitución de Estados

Unidos, reconocidos por el Tribunal Supremo de Estados Unidos". *Casellas Toro*, 197 DPR en las págs. 1014, 1019. Así, resulta innegable que el derecho a un juicio por jurado aplica en toda su extensión a Puerto Rico.

## V.

En el caso ante nuestra consideración, el señor Torres Rivera solicita que revoquemos las sentencias dictadas en su contra por los tres delitos de actos lascivos porque la decisión del Tribunal Supremo de Estados Unidos aplica a Puerto Rico y, consiguientemente, exige que los veredictos en nuestra jurisdicción sean unánimes. Tal y como se adelantó, el Procurador General se allana a esta contención y reconoce que, en el caso particular del señor Torres Rivera, procede la revocación de las sentencias dictadas por tres de los once delitos en virtud de veredictos no unánimes y la celebración de un nuevo juicio.[17] *Véase*

---

[17] El escenario aquí contemplado fue objeto de discusión por los miembros de la Asamblea Constituyente. El texto de la Sección 11 admite veredictos unánimes, aunque reconoce flexibilidad a la legislatura para establecer el número de votos necesarios para lograr una condena que satisfaga el rigor de la Sección 11. Así se desprende del Diario de Sesiones de la Convención Constituyente cuando se reconoció la posibilidad de que la utilización de la frase "no menos de nueve" admitiera variaciones mediante legislación. *Véase Diario de Sesiones de la Convención Constituyente de Puerto Rico* en las págs. 1939-1941 (versión digital). Igualmente, el Informe de la Comisión de la Carta de Derechos explica que "la fórmula propuesta permitirá a la [Asamblea] Legislativa aumentar el margen de mayoría hasta la unanimidad, si lo juzgare conveniente en el futuro". *Informe de la Comisión de la Carta de Derechos*, en la pág. 3184 (versión digital). Véase además,

*Escrito en cumplimiento de orden*, en las págs. 24-25 ("procede la anulación de los veredictos en los casos GIS2015G0002, GIS2015G003 y GIS2014G0011 **y la celebración de un nuevo juicio a esos efectos**".) (énfasis suplido).

No obstante, el Procurador General advierte que su postura responde a que este caso "está vigente en revisión directa ante este Tribunal". *Escrito en cumplimiento de orden*, en la pág. 2.[18] Asimismo, solicita que se sostenga

---

J. Trías Monge, *Historia Constitucional de Puerto Rico*, Río Piedras, Ed. UPR, 1982, Vol. III, págs. 194-195.

La facultad legislativa de requerir que toda condena fuera por los doce miembros del jurado siempre ha estado comprendida en la exigencia constitucional de que sea por "no menos de nueve". A pesar de que la Asamblea Legislativa nunca ha aumentado el número de votos requeridos para lograr una condena, según previó la Constituyente, lo decidido en *Ramos v. Louisiana* y nuestra lectura del texto de la Sección 11 como nos ordena *Ramos*, requerirá que la legislatura enmiende las Reglas de Procedimiento Criminal para ordenar con claridad y sin ambages la exigencia de unanimidad en los veredictos de culpabilidad acorde con este nuevo precedente judicial. Así, pues, el efecto práctico de lo decidido en *Ramos v. Louisiana* es suprimir la flexibilidad que el texto constitucional le reconoció a la legislatura para aumentar el mínimo de nueve por vía de legislación.

[18] En cuanto a esto, destacamos que el dictamen de *Ramos v. Louisiana* específicamente hace referencia a la aplicabilidad de la norma pautada a aquellos casos que se encuentren pendientes de revisión y, por tanto, no sean finales y firmes. Así, al atender las preocupaciones de los jueces disidentes en torno a los efectos de la decisión, se explica que "[t]he first concerns the fact Louisiana and Oregon may need to retry defendants convicted of felonies by nonunanimous verdicts whose cases are still pending on direct appeal." *Ramos v. Louisiana*, *supra*, en la pág. 22. Estas expresiones son cónsonas con los dictámenes previos de este Tribunal relacionados con la aplicación retroactiva de las normas jurisprudenciales en los casos pendientes ante nuestros tribunales. Específicamente, en *Pueblo v. Torres Irizarry*, 199 DPR 11 (2017) confirmamos lo resuelto

la validez de los veredictos unánimes emitidos en los ocho delitos restantes para los cuales se dictó sentencia condenatoria. En atención a la validez de estas convicciones, el Procurador General hace hincapié en que el señor Torres Rivera no debe ser excarcelado y debe seguir extinguiendo la pena que le fue impuesta por esos ocho delitos. Nótese, sin embargo, que el remedio solicitado por la representación legal del señor Torres Rivera en su *Moción urgente* se circunscribe justamente a "la revocación de la sentencia condenatoria en cuanto a la culpabilidad del Sr. Torres Rivera bajo los tres cargos del Artículo 133 A del

---

en *Pueblo v. González Cardona*, 153 DPR 765 (2001) respecto a cómo una norma adoptada jurisprudencialmente que provea una defensa de carácter constitucional a un acusado aplicará retroactivamente "siempre que al momento de adoptarse esa norma la sentencia de la cual se recurre no haya advenido final y firme". *Torres Irizarry*, 199 DPR en la pág. 27. Véase, además *Pueblo v. Thompson Faberllé*, 180 DPR 497 (2010)(*citando a González Cardona*, 153 DPR en las págs. 770-771 (2001)). Reiteramos, sin embargo, que el asunto de la retroactividad no se encuentra ante la consideración de este Tribunal y que, como se adelantó, la aplicación retroactiva del requisito de unanimidad actualmente está planteada ante el Tribunal Supremo de Estados Unidos en el caso de *Edwards v. Vannoy*, No. 19-5807 (5th Cir.), expedido el 4 de mayo de 2020. En cuanto a esto, el Juez Gorsuch reconoció en su Opinión particular que el dictamen y el análisis en el que se sustenta no comprende aquellos casos para los cuales existan sentencias finales y firmes, puesto que la aplicación retroactiva de la norma no estaba ante la consideración del Tribunal en ese caso. *Id.* en la pág. 24. (Gorsuch J. Op.) ("Whether the right to jury unanimity applies to cases on collateral review is a question for a future case where the parties will have a chance to brief the issue and we will benefit from their adversarial presentation. That litigation is sure to come, and will rightly take into account the States' interest in the finality of their criminal convictions.").

Código Penal, pues el veredicto no fue emitido unánimemente". *Moción urgente*, en la pág. 6.[19] En cuanto a los demás señalamientos de error planteados en el recurso de *certiorari*, declinamos ejercer nuestra jurisdicción para revisar el dictamen del Tribunal de Apelaciones.

Una lectura de la Opinión emitida el Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana*, *supra*, devela que la unanimidad constituye una protección procesal esencial adicional que deriva de -y es consustancial a- el derecho fundamental a un juicio por jurado consagrado en la Sexta Enmienda de la Constitución de Estados Unidos. El reconocimiento de la unanimidad como una cualidad intrínseca del derecho fundamental a un juicio por un jurado imparcial es vinculante en nuestra jurisdicción y obliga a nuestros tribunales a requerir veredictos unánimes en todos los procedimientos penales por delitos graves que se ventilen en sus salas.[20]

_____

[19] En cuanto a los demás señalamientos de error planteados en el recurso de *certiorari*, declinamos ejercer nuestra jurisdicción para revisarlos. Ello, por entender que el Tribunal de Apelaciones no erró al confirmar las sentencias dictadas por el Tribunal de Primera Instancia para los ocho delitos en los cuales el jurado rindió un veredicto unánime.

[20] No puede ser de otra manera; no aplicar lo decidido en *Ramos v. Louisiana* en nuestra jurisdicción resultaría en el absurdo de permitirle a Puerto Rico negar a sus ciudadanos el ejercicio pleno de un derecho fundamental que todos los estados vienen obligados a reconocer. En palabras del profesor Helfeld, "Not to do so would require a justification, explaining why Puerto Rico could deny a fundamental right which no state can deny." Helfeld, *supra* en la pág. 458.

En virtud del cambio en el estado de derecho que supone el reconocimiento del requisito de unanimidad como un componente esencial del derecho a un juicio por jurado, procede revocar las sentencias dictadas en contra del señor Torres Rivera por los tres cargos de actos lascivos al amparo del Art. 133A del Código Penal para los cuales no se logró un veredicto unánime. Conforme a la solicitud de remedio del Procurador General contenida en su *Escrito en cumplimiento de orden*, se ordena la celebración de un nuevo juicio para estos tres cargos. Se advierte que, conforme a la norma pautada en *Ramos v. Louisiana*, *supra*, para lograr una convicción, el jurado deberá rendir un veredicto unánime.

## VI.

Por los fundamentos que anteceden, se revocan las sentencias dictadas por el Tribunal de Primera Instancia en contra del señor Torres Rivera por los tres cargos de actos lascivos tipificados en el Art. 133A del Código Penal de Puerto Rico y se ordena la celebración de un nuevo juicio conforme a lo aquí resuelto. Las sentencias condenatorias en los demás cargos permanecen inalteradas.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

Recurrido

v.

Tomás Torres Rivera

Peticionario

**Núm.** CC-2019-0916

SENTENCIA

San Juan, Puerto Rico, a 8 de mayo de 2020

Por los fundamentos expuestos en la Opinión que antecede, se revocan las sentencias dictadas por el Tribunal de Primera Instancia en contra del señor Torres Rivera por los tres cargos de actos lascivos tipificados en el Art. 133A del Código Penal de Puerto Rico y se ordena la celebración de un nuevo juicio conforme a lo aquí resuelto. Las sentencias condenatorias en los demás cargos permanecen inalteradas.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez está conforme con la Opinión emitida por este Tribunal, excepto con el contenido de la nota al calce número dieciocho (18), con la cual concurre, y emite las siguientes expresiones:

"Hoy nos enfrentamos a un nuevo estado de derecho, pautado por el Tribunal Supremo de los Estados Unidos, en materia de la administración de la institución del jurado. Específicamente, el requerimiento de unanimidad del veredicto, como garantía individual para que una persona sea decretada culpable. En el precedente, el más alto foro judicial federal dejó claro su aplicabilidad a los estados. Ahora bien, al igual que muchas otras controversias jurídicas que los foros judiciales hemos dilucidado históricamente, hoy nos corresponde determinar los efectos de este precedente en Puerto Rico.

Hoy analizamos una norma constitucional que aplica a Puerto Rico por tratarse de un derecho reconocido como fundamental, aunque el Tribunal Supremo de los Estados Unidos no haya identificado expresamente el fundamento concreto de tal aplicación. En ocasiones, no basta saber que aplica determinado reclamo, sino que debe

venir acompañado de un fundamento concreto. Ello, por las consecuencias jurídicas que se derivan de la ausencia o no de esa fundamentación. Esa realidad, pretende ser minimizada por algunos sectores, pero considero que la falta de coherencia, claridad y la no erradicación de visiones discriminatorias en la jurisprudencia, es parte significativa del germen que mantiene a Puerto Rico en un limbo jurídico en multiplicidad de controversias constitucionales y alto interés público. Por tanto, coetáneo a concluir que *Ramos v. Louisiana*, 590 US ___ (2020), aplica a nuestra jurisdicción, creo pertinente recordar esa realidad que, a fin de cuentas, enmarca el contexto en el que tenemos que resolver controversias atinentes a las relaciones entre Puerto Rico y los Estados Unidos. Con ello en mente, abordo los dos puntos que motivan estas expresiones particulares.

En primer término, Puerto Rico merece un trato más coherente, democrático y claro en torno a las controversias constitucionales que atiende el Tribunal Supremo de los Estados Unidos. En no toda controversia constitucional queda claro y de forma igualitaria el tratamiento brindado a Puerto Rico. Como he mencionado "una relación colonial genera desigualdades y controversias en muchos ámbitos de la sociedad. En todas esas dimensiones existe el potencial de que permeen planteamientos, fundamentos, argumentos y soluciones jurídicas. Es por ello que los miembros de la Judicatura federal y local no estamos exentos, como juristas, de enfrentarnos a controversias civiles y criminales, entre otras, en las que se cuestionen desigualdades, tensiones sociales y, más relevante aun, quién tiene el poder para realizar determinada acción." L. F. Estrella Martínez, *Puerto Rico: la evolución de un apartheid territorial*, 52 Rev. Jur. UIPR 425, 425 (2017). Hoy, ni siquiera podemos afirmar concretamente de dónde emana la garantía aquí reconocida. Lo anterior a consecuencia de los precedentes que actualmente siguen acechando y que acertadamente el Honorable juez Torruella del Primer Circuito de Apelaciones denomina como "la doctrina de los [pueblos] separados y desiguales." Véase J. R. Torruella, *The Supreme Court and Puerto Rico: The Doctrine of Separate and Unequal*, Río Piedras, Ed. Universidad de Puerto Rico (1985). Ello desencadena en lo que he catalogado como un *apartheid* jurídico en el Caribe. Es hora ya que el tratamiento jurídico brindado a los ciudadanos de Puerto Rico sea fundamentado en visiones que

dejen atrás jurisprudencia que esté enmarcada en unos preceptos discriminatorios y desiguales. "[L]a denigrante reacción en cadena constitucional que trajo consigo la Doctrina de los Casos Insulares sigue hoy en día fomentando un trato separado y desigual para los ciudadanos estadounidenses que [residen en Puerto Rico]". Gustavo A. Gelpí, *Los Casos Insulares: Un Estudio Histórico Comparativo de Puerto Rico, Hawaii y las Islas Filipinas*, 45 Rev. Jur. UIPR 215, 218 (2011).

Ante ese cuadro, estamos ante un estado de derecho en que todas las garantías y los reconocimientos que dimanan de la tinta de la Constitución Federal no necesariamente aplican a los ciudadanos de Puerto Rico, por ser un apartheid territorial. La consecuencia: una democracia a medias tintas y que mancha la legitimación de Estados Unidos en predicar los derechos humanos en otros lares.

Hoy, aun con las complejidades que conlleva ese limbo jurídico, reitero que analizamos una norma constitucional que aplica a Puerto Rico por tratarse de un derecho reconocido como fundamental, aunque el Tribunal Supremo de los Estados Unidos no haya identificado expresamente el fundamento concreto de tal aplicación. En ese contexto, la segunda motivación de estas expresiones particulares estriba en abordar completamente las normas de retroactividad que podrían aplicar ante el nuevo estado de derecho. En muchas ocasiones, las notas al calce tienen igual o mayor relevancia para el desarrollo del derecho. De hecho, hay importantes casos que se conocen más por una nota al calce en particular, como lo es *United States v. Carolene Prods. Co.*, 304 US 144, 152 n.4 (1938). Dicho sea de paso, en esa nota al calce se abordan elementos pertinentes a la discusión de estas expresiones, dado que en las mismas el Juez Stone precisó que el prejuicio en contra de ciertas minorías discretas e insulares puede ser una condición especial, por lo que se podría requerir una mayor supervisión judicial.

Precisamente, nos encontramos ante una modalidad de ese tipo de Opinión, en la que una nota al calce es de particular relevancia para el futuro de la administración del sistema de justicia criminal y el derecho constitucional. Como las notas al calce también pautan y son parte de las Opiniones, me veo obligado a concurrir en ese extremo. Específicamente, me refiero a la

nota al calce dieciocho (18). Ciertamente, apoyo reconocer la **norma general** de que la jurisprudencia que acarrea un nuevo postulado constitucional penal aplica retroactivamente a los casos activos en los tribunales. Entiéndase, a casos que aún no son finales y firmes. *Pueblo v. Thompson*, 180 DPR 497, 508 (2010) ("Así, nos reiteramos en la norma que establecimos en *Pueblo v. González Cardona*, [153 DPR 765 (2001)], cuando adoptamos la tendencia federal de aplicar las interpretaciones judiciales de normas procesales penales que tengan rango constitucional a aquellos casos que al momento de emitirse la opinión no hubiera advenido una sentencia final y firme").

Ahora bien, tal doctrina de retroactividad cuenta con otros aspectos no incluidos en la referida nota al calce. Precisamente, en *Ramos v. Louisiana*, supra, por voz del Juez Gorsuch, se reconoce la existencia de excepción al postulado general de que la retroactividad de nuevas normas jurisprudenciales penales de carácter constitucional se extiende únicamente a casos pendientes ante los tribunales. Así, reconociendo la posibilidad de que una nueva norma constitucional pueda extenderse a casos ya finales y firmes. Íd., pág. 24 (Gorsuch, J. Op.) ("Under *Teague v. Lane*, [489 US 288 (1989),] newly recognized rules of criminal procedure do not normally apply in collateral review. True, *Teague* left open the possibility of an exception for "watershed rules" "implicat[ing] the fundamental fairness [and accuracy] of the trial."). A su vez, en *Teague v. Lane*, se resolvió que si la nueva regla adoptada es sustantiva también aplicaría la retroactividad a casos finales y firmes. Íd., pág. 307 (if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe); *Whorton v. Bockting*, 549 US 406 (2007) ("A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a "'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."); *Schriro v. Summerlin,* 542 US 348 (2004).

En consecuencia, para efectos de evaluar la retroactividad de una nueva norma constitucional, más allá de la etapa procesal en que se encuentren los casos, se debe evaluar el contenido de la misma. Si la norma es sustantiva o *watershed,* se

aplicará a todos los casos, independientemente hubiesen advenido finales y firmes. Por el contrario, si fuese una norma procesal, solo se aplicaría a los casos pendientes de revisión ante los distintos tribunales. "El reto para un tribunal, por tanto, está en reconocer ante qué tipo de nueva norma enunciada se está, previo a determinar el alcance de su aplicación retroactiva". I. Rosario Nieves. <u>Alcance de la retroactividad de las normas constitucionales enunciadas jurisprudencialmente: una réplica al profesor Ernesto Chiesa</u>, In Rev (19 de abril de 2019). A esos efectos:

> [C]uando la Corte Suprema de los Estados Unidos enuncia una nueva norma de carácter constitucional, los estados vienen obligados a determinar, previo al alcance de la retroactividad, si la misma es de naturaleza procesal, sustantiva o procesal medular (*watershed*). Del resultado de ese ejercicio, podrá concluirse, de acuerdo con las excepciones de *Teague*, si la aplicación retroactiva de la norma alcanza a casos que ya advinieron finales y firmes. En esa encomienda, los estados están en la libertad de decidir si otorgar mayor amplitud retroactiva a una norma meramente procesal, por ejemplo; es decir, aplicarla a casos que ya hubiesen advenido finales y firmes. Esa libertad, sin embargo, no debe confundirse con el hecho de que cuando se está ante una norma de naturaleza sustantiva, la misma debe ser aplicada retroactivamente, puesto que los estados no tienen discreción para hacer lo contrario, aun en casos finales y firmes. Íd.

En cuanto a la aplicación retroactiva de la nueva norma constitucional adoptada en *Ramos v. Louisiana*, supra, el Tribunal Supremo de Estados Unidos se limitó a reconocer expresamente la aplicación de la nueva norma constitucional a casos activos, incluidos los pendientes en etapa apelativa, por ser esta la situación de hechos que tenía ante su consideración. No obstante, no se adelantó una postura mayoritaria concreta en cuanto a la aplicación retroactiva de la nueva norma a casos finales y firmes, dejando así abierta la posibilidad de una aplicación

retroactiva a esos escenarios. Íd., pág. 24 (Gorsuch, J. Op.) ("Whether the right to jury unanimity applies to cases on collateral review is a question for a future case where the parties will have a chance to brief the issue and we will benefit from their adversarial presentation. That litigation is sure to come, and will rightly take into account the States' interest in the finality of their criminal convictions").

En el caso de autos, no debe existir la menor duda de la aplicación de la nueva norma constitucional discutida en la ponencia, ya que el caso es uno activo en su etapa apelativa. Ahora bien, me parece desacertado sólo hacer referencia a la aplicación retroactiva a los casos activos y dejar fuera el abanico de posibilidades antes mencionado. Adviértase también que hacemos una mención aislada de que el Tribunal Supremo de los Estados Unidos atenderá un caso relacionado con la retroactividad de la norma constitucional, sin reconocer que los estados y Puerto Rico tenemos la libertad de pautar el alcance de esa retroactividad. Esa aclaración, a mi juicio, es importante. Por tanto, por los fundamentos contenidos en estas expresiones, considero que la Opinión debió contener esas normas de derecho, que omite la nota al calce. En la manera en que está redactada la nota al calce, aunque advierte que no está resolviendo el asunto de la retroactividad, lleva el mensaje erróneo de que la única posibilidad de aplicación de la nueva norma constitucional es a los casos activos. Indistintamente del curso de acción sustantivo que adoptemos en una próxima controversia, estimo que debimos exponer la totalidad del derecho que podría aplicar en este asunto y en otras controversias de retroactividad."


José Ignacio Campos Pérez
Secretario del Tribunal Supremo